PIZONKA, McGRORY, REILLEY, BELLO & McGRORY, P.C.
BY: JOSEPH P. PIZONKA, ESQUIRE
ATTORNEY I.D. NO. 23866
144 East DeKalb Pike, Suite 300
King of Prussia, PA 19406
(610) 992-1300                                        ATTORNEY FOR PLAINTIFF

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| BANK EXPRESS INTERNATIONAL | : |
| 489 Shoemaker Road, Suite 110 | : |
| King of Prussia, PA 19406 | : CIVIL ACTION NO.: 02-CV-4076 |
| Plaintiff | : |
|  | : |
| v. | : |
|  | : |
| KANG, d/b/a BANKCARD SERVICE, | : |
| INCORPORATED et al. | : |
| 3055 Wilshire Blvd., 3rd Floor | : |
| Los Angeles, CA 90010 | : |
|  | : |
| and | : |
|  | : |
| SOO Y. KANG, individually and/or /t/a | : |
| RANCO MARKET | : |
| 930 23rd Street | : |
| Richmond, CA 94804 | : |
|  | : |
| and | : |
|  | : |
| DOO YOUNG LEE, individually and/or t/a | : |
| FELTON FAIR LIQUORS | : |
| 6273 Graham Hill Road | : |
| Felton, CA 95018 | : |
|  | : |
| and | : |
|  | : |
| JENNY YU, individually and/or t/a | : |
| MAYFAIR MARKET | : |
| 1 Mayfair Drive | : |
| Salinas, CA 93955 | : |
|  | : |
| and | : |

JEOUNG KIM, individually and/or t/a          :
SALOMI VIDEO                                 :
1038 E. El Camino Real                       :
Sunnyvale, CA 94087                          :
                                             :
          and                                :
                                             :
JUNG SOO KIM, individually and/or t/a        :
DANNY'S MARKET                               :
1570 Pomeroy Avenue                          :
Santa Clara, CA 95051                        :
                                             :
          and                                :
                                             :
JEONG KIM, individually and/or t/a           :
CLUB HOUSE CAFÉ & LOUNGE                      :
1010 S. Wolfe Road                           :
Sunnyvale, CA 94086                          :
                                             :
          and                                :
                                             :
YOUNG BIN YU, individually and/or t/a        :
WEST SIDE LIQUOR                             :
1272 San Juan Road                           :
Hollister, CA 95023                          :
                                             :
          and                                :
                                             :
KAREN HA, individually and/or t/a            :
ELCAMINO MONGOLIAN                           :
3380 El Camino Real                          :
Santa Clara, CA 95051                        :
                                             :
          and                                :
                                             :
RAGVINDER SANDHU, individually and/or t/a    :
BON FARE MARKET #24                          :
211 Port Chicago #4 West                     :
Bay Point, CA 94565                          :
                                             :
          and                                :
                                             :
HAMOND KU, individually and/or t/a/          :
BILL OF FARE RESTAURANT                      :
1005 Saratoga Avenue                         :
San Jose, CA 95129                           :

|                                          |   |
|------------------------------------------|---|
|                                          | : |
| and                                      | : |
|                                          | : |
| YEO JUNG LEE, individually and/or t/a    | : |
| SECATIDE, INC.                           | : |
| 1950 Fremont Blvd.                       | : |
| Seaside, CA 93955                        | : |

## AMENDED COMPLAINT

The plaintiff, Bank Express International, Incorporated, by and through its

attorneys, Pizonka, McGrory, Reilley, Bello & McGrory, P.C. hereby files this Amended

Complaint and alleges as follows:

1.      Plaintiff, Bank Express International, Incorporated ("Bank Express"), is a

Pennsylvania corporation authorized to operate pursuant to the laws of the

Commonwealth of Pennsylvania and having a principal place of business located at 489

Shoemaker Road, Suite 110, King of Prussia, Pennsylvania 19406.

2.      Venue and Jurisdiction are proper in the Eastern District of Pennsylvania,

for the following reasons: 1) the contracts/agreements upon which this action is based

were executed and/or became effective in the Eastern District of Pennsylvania, and 2)

each Defendant signing a contract knowingly contracted with a Pennsylvania Corporation

and established minimum contacts with Pennsylvania, and 3) all of the significant acts of

performance, in accordance with the terms of the contracts at issue, were carried out by

Bank Express in Pennsylvania, and 4) the tortuous acts of interference against the

contracts at issue were intentionally and  knowing committed, and 5) said acts

specifically and willfully targeted Bank Express, were aimed towards Bank Express and

willfully caused harm or tortuous injury in this Commonwealth.  Venue in this District is

proper pursuant to 28 U.S.C. section 1391 (a)(2), because a substantial part of the events

giving rise to the claim occurred within this judicial district. Bank Express believes it will discover additional information, during the discovery process that will further support Venue and Jurisdiction within this District.

3.     Bank Express is in the business of enabling business owners to generate revenue though their utilization of automated teller machines ("ATM") at their business locations. Bank Express enables a business owner to generate revenue by monitoring the accurate electronic processing of each cash withdraw ("transaction"), which a customer makes from an ATM maintained at the business owner's establishment. Bank Express monitors this electronic processing from its principal place of business in King of Prussia, Pennsylvania.

4.     For each transaction, a customer is charged a surcharge, usually in the amount of One Dollar and Fifty Cents ($1.50). A standard Bank Express contract entitles a business owner to eighty-five percent (85%) of each surcharge while Bank Express is usually entitled to fifteen percent (15%). The percentages can vary depending on the terms of each contract.

5.     Bank Express often oversees the procurement of ATMs for business owners by securing lease agreements between a business owner and a third-party leasing company. Bank Express always secures lease agreements for business owners from its principal place of business in King of Prussia, Pennsylvania. Additionally, Bank Express does not secure lease agreements for business owners from third-party leasing companies until a business owner has completed and signed a Lease Application. The address of Bank Express' principal place of business, in Pennsylvania, is clearly printed across the bottom of each Lease Application provided by Bank Express. Bank Express will not

begin to contact third party leasing companies until it has received a business owner's signed Lease Application in Pennsylvania.

6.      Bank Express also provides business owners with network monitoring for service or maintenance requirements and notifies business owners of those requirements. Bank Express provides these services from its principal place of business in King of Prussia, Pennsylvania.

7.      Additionally, Bank Express accepts calls concerning technical difficulties with its customers' ATMs and arranges the servicing of the malfunctioning ATMs.  Bank Express provides this service from its principal place of business in King of Prussia, Pennsylvania.

8.      Bank Express sends each business owner monthly transaction summaries and surcharge checks.  The surcharge checks reflect the amount each business owner is entitled to, based upon the preceding month's surcharge revenue.  Each transaction summary and surcharge check is generated and mailed to each business owner from the principal place of business of Bank Express.  The return address for each mailing envelope, containing a transaction summary or surcharge check, is Bank Express' address in King of Prussia, Pennsylvania.  Additionally, each check identifies its maker as "**BANK EXPRESS INT'L, INC.,** 489 SHOEMAKER ROAD, STE 110, KING OF PRUSSIA, PA 19406."

9.      Defendant, Soo Y. Yang, is an individual who is believed to be trading as Rancho Market ("Rancho"), with a business address of 930 23rd Street, Richmond, CA 94804.

10.    On or about November 11, 1999, Rancho submitted a Bank Express Lease Application, to Bank Express, whereby Rancho requested Bank Express secure Rancho a lease agreement for an ATM with a third party leasing company.  Rancho's Lease Application clearly identifies the former principal place of business of Bank Express across the bottom as "8 Cynwyd Road, Suite 100, Bala Cynwyd, PA 19004."  A copy of Rancho's Lease Application is attached hereto and marked as Exhibit "A."

11.    On or about November 15, 1999, Bank Express secured Rancho a lease agreement with ACH Leasing.  This lease agreement was secured by Bank Express from its principal place of business in King of Prussia, Pennsylvania.

12.    On or about November 25, 1999, Rancho entered a written agreement ("Rancho Agreement") with Bank Express whereby Bank Express offered and Ranco accepted, monthly electronic automated teller machine processing services from Bank Express for a period of five (5) years.

13.    Rancho's Agreement identifies Bank Express as "a Pennsylvania Corporation located at 489 Shoemaker Road Suite 110, King of Prussia, Pennsylvania 19406…."  Additionally, paragraph eleven (11) states "[t]his contract shall not be effective until accepted by [Bank Express] and signed by its duly authorized representative."  Rancho's Agreement was signed by Rancho's agent on November 19, 1999 and became effective when accepted and signed on November 25, 1999, by the president of Bank Express in King of Prussia, Pennsylvania.  Paragraph twelve (12) further states "[t]his contract shall be governed by, construed and enforced in accordance with the laws of the Commonwealth of Pennsylvania."  A copy of the Rancho Agreement is attached hereto, incorporated by reference and marked as Exhibit "B."

14.    Between December 1999 and, February 2002, Rancho received and cashed monthly surcharge checks mailed by Bank Express to Rancho.  Bank Express mailed said checks to Rancho from its principal place of business in King of Prussia, Pennsylvania.  Each said check identifies its maker as "**BANK EXPRESS INT'L, INC.,** 489 SHOEMAKER ROAD, STE 110, KING OF PRUSSIA, PA 19406."  The return address for each mailing envelope containing a surcharge check was Bank Express' address in King of Prussia, Pennsylvania.

15.    On or about, February 2002, Rancho breached the Rancho agreement by unilaterally terminating Bank Express' services before the expiration of the Rancho Agreement's term and by refusing, despite demand, to return its ATM processing servicing to Bank Express.

16.    Defendant, Doo Young Lee, is an individual who is believed to be trading as Felton Fair Liquors ("Felton"), with a business address of 6273 Graham Hill Raod, Felton, CA 95018.

17.    On or about January 22, 2001 Felton submitted a Bank Express Lease Application, to Bank Express, whereby Felton requested Bank Express secure Felton a lease agreement for an ATM with a third party leasing company.  Felton's Lease Application clearly identifies the principal place of business of Bank Express across the bottom as "Bank Express International 489 Shoemaker Rd. Ste. 110, King of Prussia, PA 19406."  A copy of Felton's Lease Application is attached hereto and marked as Exhibit "C."

18.    Between January 22, 2001 and January 25, 2001, Bank Express attempted to secure a lease agreement for Felton with three different leasing companies.  These

efforts occurred from the principal place of business of Bank Express.  All three of these lease applications were rejected.  On or about February 1, 2001, Bank Express secured Felton a lease agreement with LEASECOMM.  This lease agreement was secured by Bank Express from its principal place of business in King of Prussia, Pennsylvania.

19.    On or about February 2, 2001, Felton entered a written agreement ("Felton Agreement") with Bank Express whereby Bank Express offered and Felton accepted, monthly electronic automated teller machine processing services from Bank Express for a period of five (5) years.

20.    Felton's Agreement identifies Bank Express as "a Pennsylvania Corporation located at 489 Shoemaker Road Suite 110, King of Prussia, Pennsylvania 19406…." Additionally, paragraph eleven (11) states "[t]his contract shall not be effective until accepted by [Bank Express] and signed by its duly authorized representative."  Felton's Agreement was signed by Felton's agent on February 1, 2001 and became effective when accepted and signed on February 2, 2001, by the president of Bank Express in King of Prussia, Pennsylvania.  Paragraph twelve (12) further states "[t]his contract shall be governed by, construed and enforced in accordance with the laws of the Commonwealth of Pennsylvania."  A copy of the Felton Agreement is attached hereto, incorporated by reference and marked as Exhibit "D."

21.    Between March 2001 and February 2002, Felton received and cashed monthly surcharge checks mailed by Bank Express to Felton.  Bank Express mailed said checks to Felton from its principal place of business in King of Prussia, Pennsylvania. Each said check identifies its maker as "**BANK EXPRESS INT'L, INC.,** 489 SHOEMAKER ROAD, STE 110, KING OF PRUSSIA, PA 19406."  The return address

for each mailing envelope containing a surcharge check was Bank Express' address in King of Prussia, Pennsylvania.

22.     On or about, February 2002, Felton breached the Felton Agreement by unilaterally terminating Bank Express' services before the expiration of the Felton Agreement's term and by refusing, despite demand, to return its ATM processing servicing to Bank Express.

23.     Defendant, Jenny Yu, is an individual who is believed to be trading as Mayfair Market ("Mayfair"), with a business address of 1 Mayfair Drive, Salinas, CA 94087.

24.     On or about March 3, 2001, Mayfair submitted a Bank Express Lease Application, to Bank Express, whereby Mayfair requested Bank Express secure Mayfair a lease agreement for an ATM with a third party leasing company.  Mayfair's Lease Application clearly identifies the principal place of business of Bank Express across the bottom as "Bank Express International 489 Shoemaker Rd. Ste. 110, King of Prussia, PA 19406."  A copy of Mayfair's Lease Application is attached hereto and marked as Exhibit "E."

25.     On or about March 6, 2001, Bank Express secured Mayfair a lease agreement with QL Capital, Inc. by convincing QL Capital to allow Mayfair to assume the lease agreement of the former owner of Mayfair's business.  This lease agreement assumption was secured by Bank Express from its principal place of business in King of Prussia, Pennsylvania.

26.     On or about March 9, 2001, Mayfair entered a written agreement ("Mayfair Agreement") with Bank Express whereby Bank Express offered and Mayfair

accepted, monthly electronic automated teller machine processing services from Bank Express for a period of five (5) years.

27.    Mayfair's Agreement identifies Bank Express as "a Pennsylvania Corporation located at 489 Shoemaker Road Suite 110, King of Prussia, Pennsylvania 19406…." Additionally, paragraph eleven (11) states "[t]his contract shall not be effective until accepted by [Bank Express] and signed by its duly authorized representative." Mayfair's Agreement was signed by Mayfair's agent on or about March 9, 2001 and became effective when accepted and signed on or about March 9, 2001, by the president of Bank Express in King of Prussia, Pennsylvania. Paragraph twelve (12) further states "[t]his contract shall be governed by, construed and enforced in accordance with the laws of the Commonwealth of Pennsylvania." A copy of the Mayfair Agreement is attached hereto, incorporated by reference and marked as Exhibit "F."

28.    Between April 2001 and February 6, 2002, Mayfair received and cashed monthly surcharge checks mailed by Bank Express to Mayfair. Bank Express mailed said checks to Mayfair from its principal place of business in King of Prussia, Pennsylvania. Each said check identifies its maker as "**BANK EXPRESS INT'L, INC.,** 489 SHOEMAKER ROAD, STE 110, KING OF PRUSSIA, PA 19406." The return address for each mailing envelope containing a surcharge check was Bank Express' address in King of Prussia, Pennsylvania.

29.    On or about February 6, 2002, Mayfair breached the Mayfair agreement by unilaterally terminating Bank Express' services before the expiration of the Mayfair Agreement's term and by refusing, despite demand, to return its ATM processing servicing to Bank Express.

30.    Defendant, Jeoung Kim, is an individual who is believed to be trading as Salomi Video ("Salomi Video"), with a business address of 1038 E. El Camino Real, Sunnyvale, CA 94087.

31.    On or about May 31, 2001, Salomi Video entered a written agreement ("Salomi Video Agreement") with Bank Express whereby Bank Express offered and Salomi Video accepted, monthly electronic automated teller machine processing services from Bank Express for a period of five (5) years.

32.    Salomi Video's Agreement identifies Bank Express as "a Pennsylvania Corporation located at 489 Shoemaker Road Suite 110, King of Prussia, Pennsylvania 19406…."  Additionally, paragraph eleven (11) states "[t]his contract shall not be effective until accepted by [Bank Express] and signed by its duly authorized representative."  Salomi Video's Agreement was signed by Salomi Video's agent on May 31, 2001 and became effective when accepted by the president of Bank Express in King of Prussia, Pennsylvania.  Paragraph twelve (12) further states "[t]his contract shall be governed by, construed and enforced in accordance with the laws of the Commonwealth of Pennsylvania."  A copy of the Salomi Video Agreement is attached hereto, incorporated by reference and marked as Exhibit "G."

33.    Between June 2001 and, March 2002, Salomi Video received and cashed monthly surcharge checks mailed by Bank Express to Salomi Video.  Bank Express mailed said checks to Salomi Video from its principal place of business in King of Prussia, Pennsylvania.  Each said check identifies its maker as "**BANK EXPRESS INT'L, INC.,** 489 SHOEMAKER ROAD, STE 110, KING OF PRUSSIA, PA 19406."

The return address for each mailing envelope containing a surcharge check was Bank Express' address in King of Prussia, Pennsylvania.

34.    On or about March 2002, Salomi Video breached the Salomi Video Agreement by unilaterally terminating Bank Express' services before the expiration of the Salomi Video Agreement's term and by refusing, despite demand, to return its ATM processing services to Bank Express.

35.    Defendant, Jung Soo Kim, is an individual who is believed to be trading as Danny's Market ("Danny's Market"), with a business address of 1570 Pomeroy Avenue, Santa Clara, CA 95051.

36.    On or about October 16, 1999, Danny's Market submitted a Bank Express Lease Application, to Bank Express, whereby Danny's Market requested Bank Express secure Danny's Market a lease agreement for an ATM with a third party leasing company. Danny's Market's Lease Application clearly identifies the former principal place of business of Bank Express across its bottom as "8 Cynwyd Road, Suite 100, Bala Cywnyd, PA 19004." A copy of Danny's Market's Lease Application is attached hereto and marked as Exhibit "H."

37.    On or about October 18, 1999, Bank Express secured Danny's Market a lease agreement with ACH LEASING. This lease agreement was secured by Bank Express from its then principal place of business in Bala Cynwyd, Pennsylvania.

38.    On or about October 18, 1999, Danny's Market entered a written agreement ("Danny's Market Agreement") with Bank Express whereby Bank Express offered and Danny's Market accepted, monthly electronic automated teller machine processing services from Bank Express for a period of five (5) years. A copy of the

Danny's Market Agreement is attached hereto, incorporated herein and marked as Exhibit "I."

39.    Danny's Market's Agreement identifies the address of Bank Express as "8 Cynwyd Road, Suite 100, Bala Cywnyd, PA 19004."  Additionally, Danny's Market's Agreement specifically states that the contract was formed in Montgomery County, Pennsylvania.

40.    Between November 1999 and February 2002, Danny's Market received and cashed monthly surcharge checks mailed by Bank Express to Danny's Market.  Bank Express mailed said checks to Danny's Market from its principal place of business in King of Prussia, Pennsylvania.  Each said check identifies its maker as "**BANK EXPRESS INT'L, INC.**, 489 SHOEMAKER ROAD, STE 110, KING OF PRUSSIA, PA 19406."  The return address for each mailing envelope containing a surcharge check was Bank Express' address in King of Prussia, Pennsylvania.

41.    On or about, February 2002, Danny's Market breached the Danny's Market agreement by unilaterally terminating Bank Express' services before the expiration of the Danny's Market Agreement's term and by refusing, despite demand, to return its ATM processing services to Bank Express.

42.    Defendant, Jeong Kim, is an individual who is believed to be trading as Club House Café & Lounge ("Club House"), with a business address of 1010 S. Wolfe Road, Sunnyvale, CA 94086.

43.    On or about May 31, 2001, Club House entered a written agreement ("Club House Agreement") with Bank Express whereby Bank Express offered and Club

House accepted, monthly electronic automated teller machine processing services from Bank Express for a period of five (5) years.

44.    Club House's Agreement identifies Bank Express as "a Pennsylvania Corporation located at 489 Shoemaker Road Suite 110, King of Prussia, Pennsylvania 19406…." Additionally, paragraph eleven (11) states "[t]his contract shall not be effective until accepted by [Bank Express] and signed by its duly authorized representative." Club House's Agreement was signed by Club House's agent on May 31, 2001 and became effective when reviewed and accepted by the president of Bank Express in King of Prussia, Pennsylvania. Paragraph twelve (12) further states "[t]his contract shall be governed by, construed and enforced in accordance with the laws of the Commonwealth of Pennsylvania." A copy of the Club House Agreement is attached hereto, incorporated by reference and marked as Exhibit "J."

45.    Between June 2001 and March 5, 2002, Club House received and cashed monthly surcharge checks mailed by Bank Express to Club House. Bank Express mailed said checks to Club House from its principal place of business in King of Prussia, Pennsylvania. Each said check identifies its maker as "**BANK EXPRESS INT'L, INC., 489 SHOEMAKER ROAD, STE 110, KING OF PRUSSIA, PA 19406**." The return address for each mailing envelope containing a surcharge check was Bank Express' address in King of Prussia, Pennsylvania.

46.    On or about March 5, 2002, Club House breached the Club House Agreement by unilaterally terminating Bank Express' services before the expiration of the Club House Agreement's term and by refusing, despite demand, to return its ATM processing services to Bank Express.

14

47.     Defendant, Young Bin Yu, is an individual who is believed to be trading as West Side Liquor ("West Side"), with a business address of 1272 San Juan Road, Hollister, CA 95023.

48.     On or about May 30, 2001 West Side submitted a Bank Express Lease Application, to Bank Express, whereby West Side requested Bank Express secure West Side a lease agreement for an ATM with a third party leasing company.  West Side's Lease Application clearly identifies the principal place of business of Bank Express across the bottom as "Bank Express International 489 Shoemaker Rd. Ste. 110, King of Prussia, PA 19406."  A copy of West Side's Application is attached hereto and marked as Exhibit "K."

49.     On or about May 30, 2001 West Side entered a written agreement ("West Side Agreement") with Bank Express whereby Bank Express offered and West Side accepted, monthly electronic automated teller machine processing services from Bank Express for a period of five (5) years.

50.     West Side's Agreement identifies Bank Express as "a Pennsylvania Corporation located at 489 Shoemaker Road Suite 110, King of Prussia, Pennsylvania 19406…." Additionally, paragraph eleven (11) states "[t]his contract shall not be effective until accepted by [Bank Express] and signed by its duly authorized representative."  West Side's Agreement was signed by West Side's agent on May 30, 2001 and became effective when accepted and signed, on or about May 30, 2001 by the president of Bank Express in King of Prussia, Pennsylvania.  Paragraph twelve (12) further states "[t]his contract shall be governed by, construed and enforced in accordance

with the laws of the Commonwealth of Pennsylvania."  A copy of the West Side Agreement is attached hereto, incorporated by reference and marked as Exhibit "L."

51.    Between June 2001 and February 7, 2002, West Side received and cashed monthly surcharge checks mailed by Bank Express to West Side.  Bank Express mailed said checks to West Side from its principal place of business in King of Prussia, Pennsylvania.  Each said check identifies its maker as "**BANK EXPRESS INT'L, INC., 489 SHOEMAKER ROAD, STE 110, KING OF PRUSSIA, PA 19406.**"  The return address for each mailing envelope containing a surcharge check was Bank Express' address in King of Prussia, Pennsylvania.

52.    On or about February 7, 2002, West Side breached the West Side Agreement by unilaterally terminating Bank Express' services before the expiration of the West Side Agreement's term and by refusing, despite demand, to return its ATM processing services to Bank Express.

53.    Defendant, Karen Ha, is an individual who is believed to be trading as Elcamino Mongolian BBQ ("Elcamino"), with a business address of 3380 El Camino Real, Santa Clara, CA 95051.

54.    On or about September 20, 1999, Elcamino completed a Bank Express ATM Order Form wherein Elcamino requested Bank Express order an ATM for Elcamino.  Said ATM Order Form clearly indicates the former business address for Bank Express in the upper left hand corner.  The document states "Bank Express of Philadelphia, 8 Cynwyd Road & Union Avenue, Bala Cynwyd, Pennsylvania 19004."  A copy of the ATM Order Form is attached hereto and marked as Exhibit "M."

55.     On or about September 11, 1999, Elcamino submitted a Bank Express
Lease Application, to Bank Express, whereby Elcamino requested Bank Express secure
Elcamino a lease agreement for an ATM with a third party leasing company.  Elcamino's
Lease Application clearly identifies the former principal place of business of Bank
Express across the bottom as "8 Cynwyd Road, Suite 100, Bala Cynwyd, PA 19004"  A
copy of Elcamino's Lease Application is attached hereto and marked as Exhibit "N."

56.     On or about September 20, 1999, Bank Express secured a lease agreement
for Elcamino with ACH LEASING.  This lease agreement was secured by Bank Express
from its principal place of business in King of Prussia, Pennsylvania.

57.     On or about September 20, 1999, Felton entered a written agreement
("Elcamino Agreement") with Bank Express whereby Bank Express offered and
Elcamino accepted, monthly electronic automated teller machine processing services
from Bank Express for a period of five (5) years.

58.     Elcamino's Agreement identifies Bank Express as "a Pennsylvania
Corporation located at 489 Shoemaker Road Suite 110, King of Prussia, Pennsylvania
19406…." Additionally, paragraph eleven (11) states "[t]his contract shall not be
effective until accepted by [Bank Express] and signed by its duly authorized
representative."  Elcamino's Agreement was signed by Elcamino's agent on or about
September 20, 1999 and became effective when accepted and signed, on or about
September 20, 1999, by the president of Bank Express in King of Prussia, Pennsylvania.
Paragraph twelve (12) further states "[t]his contract shall be governed by, construed and
enforced in accordance with the laws of the Commonwealth of Pennsylvania."  A copy of

the Elcamino Agreement is attached hereto, incorporated by reference and marked as Exhibit "O."

59.    Between October 1999 and February 2002, Elcamino received and cashed monthly surcharge checks mailed by Bank Express to Elcamino.  Bank Express mailed said checks to Elcamino from its principal place of business in King of Prussia, Pennsylvania.  Each said check identifies its maker as "**BANK EXPRESS INT'L, INC., 489 SHOMAKER ROAD, STE 110, KING OF PRUSSIA, PA 19406.**"  The return address for each mailing envelope containing a surcharge check was Bank Express' address in King of Prussia, Pennsylvania.

60.    On or about, February 2002, Elcamino breached the Elcamino Agreement by unilaterally terminating Bank Express' services before the expiration of the Elcamino Agreement's term and by refusing, despite demand, to return its ATM processing services to Bank Express.

61.    Defendant, Ragvinder Sandhu, is an individual who is believed to be trading as Bonfare Market #24 ("Bonfare"), with a business address of 211 Port Chicago #4 West, Bay Point, CA 94565.

62.    On or about May 24, 2000, Bonfare submitted a Bank Express Lease Application, to Bank Express, whereby Bonfare requested Bank Express secure Bonfare a lease agreement for an ATM with a third party leasing company.  Bonfare's Lease Application clearly identifies the principal place of business of Bank Express across the bottom as "8 Cynwyd Road, Suite 100, Bala Cynwyd, PA 19004." A copy of Bonfare's Lease Application is attached hereto and marked as Exhibit "P."

63.    On or about April 17, 2000, Bank Express secured a lease agreement for Bonfare with ACH LEASING.  This lease agreement was secured by Bank Express from its principal place of business in King of Prussia, Pennsylvania.

64.    On or about April 25, 2000, Bonfare entered a written agreement ("Bonfare Agreement") with Bank Express whereby Bank Express offered and Bonfare accepted, monthly electronic automated teller machine processing services from Bank Express for a period of five (5) years.

65.    Bonfare's Agreement identifies the address of Bank Express as "8 Cynwyd Road, Suite 1000, Bala Cynwyd, PA 19004."  A copy of the Bonfare Agreement is attached hereto, incorporated by reference and marked as Exhibit "Q."

66.    Between May 2000 and February 8, 2002, Bonfare received and cashed monthly surcharge checks mailed by Bank Express to Bonfare.  Bank Express mailed said checks to Bonfare from its principal place of business in King of Prussia, Pennsylvania.  Each said check identifies its maker as "**BANK EXPRESS INT'L, INC., 489 SHOEMAKER ROAD, STE 110, KING OF PRUSSIA, PA 19406.**"  The return address for each mailing envelope containing a surcharge check was Bank Express' address in King of Prussia, Pennsylvania.

67.    On or about, February 8, 2002, Bonfare breached the Bonfare Agreement by unilaterally terminating Bank Express' services before the expiration of the Bonfare Agreement's term and by refusing, despite demand, to return its ATM processing services to Bank Express.

68.     Defendant, Hamond Ku, is an individual who is believed to be trading as Bill of Fare ("Bill of Fare"), with a business address of 1005 Saratoga Avenue, San Jose, CA 95129.

69.     On or about April 27, 2000, Bank Express secured a lease agreement for Bill of Fare with Smart Cash Leasing.  This lease agreement was secured by Bank Express from its principal place of business in King of Prussia, Pennsylvania.

70.     On or about April 27, 2000, Bill of Fare entered a written agreement ("Bill of Fare Agreement") with Bank Express whereby Bank Express offered and Bill of Fare accepted, monthly electronic automated teller machine processing services from Bank Express for a period of five (5) years.  A copy of the Bill of Fare Agreement is attached hereto, incorporated herein and marked as Exhibit "R."

71.     Bill of Fare's Agreement identifies the address of Bank Express as "8 Cynwyd Road, Suite 1000, Bala Cynwyd, PA 19004."

72.     Between May 2000 and May 8, 2002, Bill of Fare received and cashed monthly surcharge checks mailed by Bank Express to Bill of Fare.  Bank Express mailed said checks to Bill of Fare from its principal place of business in King of Prussia, Pennsylvania.  Each said check identifies its maker as "**BANK EXPRESS INT'L, INC., 489 SHOEMAKER ROAD, STE 110, KING OF PRUSSIA, PA 19406.**"  The return address for each mailing envelope containing a surcharge check was Bank Express' address in King of Prussia, Pennsylvania.

73.     On or about May 8, 2002, Bill of Fare breached the Bill of Fare Agreement by unilaterally terminating Bank Express' services before the expiration of

the Bill of Fare Agreement's term and by refusing, despite demand, to return its ATM

processing services to Bank Express.

74.     Defendant, Yeo Jung Lee and/or Secatide, Incorporated is an individual

and/or is a corporation trading as Hiway Liquor ("Hiway"), with a business address of

1950 Fremont Blvd., Seaside, CA 93955.

75.     On or about April 6, 2000, Hiway submitted a Bank Express Lease

Application to Bank Express, whereby Hiway requested Bank Express secure Hiway a

lease agreement for an ATM with a third party leasing company.  Hiway's Lease

Application clearly identifies the former principal place of business of Bank Express

across the bottom as "8 Cynwyd Road, Suite 100, Bala Cynwyd, PA 19004."  A copy of

Hiway's Lease Application is attached hereto and marked as Exhibit "S."

76.     Between May 2, 2000 and May 3, 2002, Bank Express attempted to secure

Hiway a lease agreement with four (4) different leasing companies.  All attempts were

rejected, as Hiway had derogatory credit, insufficient credit and/or minimal personal

credit.  All attempts to secure Hiway a lease agreement were made by Bank Express from

its principal place of business in King of Prussia, Pennsylvania.

77.     On or about May 3, 2000, Bank Express leased an ATM from ACH

LEASING LLC. and provided said machine to Hiway, at Hiway's location in California.

Bank Express entered this lease from its principal place of business in King of Prussia,

Pennsylvania.  Bank Express leased the ATM in reliance upon a five (5) year ATM Site

Location Agreement ("Location Agreement") between Bank Express and Hiway.  A copy

of same is attached hereto, incorporated by reference and marked as Exhibit "T."

78.     Pursuant to the Location Agreement, Hiway allowed Bank Express to install an ATM machine, within Hiway's place of business in California. Bank Express was to pay Hiway a monthly fee for the placement of the ATM and a percentage of each surcharge. The Location Agreement specifically identifies Bank Express as the "Operator." It also specifically states "[t]he jurisdiction and venue for any legal proceeding to interpret or enforce this agreement shall be in the county where the Operator . . .maintains its principal place of business or residence." The Location Agreement identifies this principal place of business of Bank Express as its former address located at, 8 Cynwyd Rd., Suite 100, Bala Cynwyd, Pa 19004.

79.     Between June, 2000 and February 2002, Hiway received and cashed monthly surcharge checks mailed by Bank Express to Hiway. Bank Express mailed said checks to Hiway from its principal place of business in King of Prussia, Pennsylvania. Each said check identifies its maker as "**BANK EXPRESS INT'L, INC.,** 489 SHOEMAKER ROAD, STE 110, KING OF PRUSSIA, PA 19406." The return address for each mailing envelope containing a surcharge check was Bank Express' address in King of Prussia, Pennsylvania.

80.     On or about February 2002, Hiway breached the Hiway agreement by unilaterally terminating Bank Express' services before the expiration of the Hiway Agreement's term and by refusing, despite demand, to return its ATM processing services to Bank Express.

81.     Hereinafter, the above-identified Defendants will be collectively referred to as the "Business Owner Defendants."

82.     In addition to the above-referenced connections to the Commonwealth of Pennsylvania, Bank Express mailed each Business Owner Defendant, during the pendency of the respective agreements, a monthly transaction summary from its principal place of business in King of Prussia, Pennsylvania.  All checks and transaction summaries were prepared and mailed from the Commonwealth of Pennsylvania.

<u>COUNT I</u>

83.     The paragraphs numbered one through eighty-one are hereby incorporated herein as if set forth in their entirety.

84.     Bank Express has performed all of its obligations pursuant to the Agreements with the Business Owner Defendants in a complete, timely and satisfactory manner.

85.     The Business Owner Defendants have breached their respective Agreements with Bank Express by unilaterally terminating its services before the expiration of the Agreements' terms and by refusing, despite demand, to return their ATM servicing to Bank Express.

86.     Bank Express has made immediate demand upon the Business Owner Defendants for their return to Bank Express for ATM servicing and has and will suffer the following **ascertainable** losses during the remaining term of each Agreement.

A)     Defendant RANCHO-Eleven Thousand Seven Hundred and Thirty Dollars ($11,730.00).

B)     Defendant FELTON-Four Thousand Six Hundred and Nintey-Two Dollars (4,692.00).

C)    Defendant MAYFAIR-One Thousand Two Hundred and Forty-Two Dollars ($1,242.00).

D)    Defendant SALOMI VIDEO-Seven Thousand Nine Hundred and Six Dollars ($7,906.00).

E)    Defendant DANNY'S MARKET-Three Thousand Two Hundred and Twenty-Five Dollars ($3,225.00).

F)    Defendant CLUB HOUSE-Four Thousand One Hundred and Eighty-Six Dollars ($4,186.00).

G)    Defendant WEST SIDE-Five Thousand Three Hundred and Eighty-Two Dollars ($5,382.00).

H)    Defendant ELCAMINO-One Thousand Eight Hundred and Forty Dollars ($1,840.00).

I)    Defendant BONFARE-Twenty-Two Thousand Four Hundred and Twenty-Five Dollars ($22,425.00).

J)    Defendant BILL OF FARE-Ten Thousand Two Hundred and Sixty Dollars ($10,260.00).

K)    Defendant SECATIDE-Thirteen Thousand One Hundred and Ten Dollars ($13,110.00).

WHEREFORE, Plaintiff demands judgment against the Business Owner Defendants in the above stated amounts, plus interest, costs, and/or other relief recoverable.

## COUNT II

87.    Paragraphs one through eight-five are hereby incorporated herein by reference as if fully set forth at length.

88.    Business Owner Defendants accepted the performance of Bank Express knowing Bank Express would expect payment for services rendered.

89.    Business Owner Defendants accepted the performance of Bank Express knowing Bank Express would expect the Business Owner Defendants to honor their respective Agreements for the length of the Agreements.

90.    Business Owner Defendants would be unjustly enriched if they were permitted to accept the benefits of the performance of Bank Express without honoring their Respective Agreements.

91.    Business Owner Defendants have been unjustly enriched.

WHEREFORE, Bank Express demands judgment in its favor and against the Business Owner Defendants, in the above stated amounts, plus interest, costs and/or other relief recoverable.

## COUNT III

92.    Paragraphs one through ninety are incorporated herein by reference as if fully set forth at length.

93.    Bank Express believes and therefore avers that Defendant, Soo Y. Kang, d/b/a Bank Card Service, Incorporated and or d/b/a Bank Card Services ("BCS") is in the business of providing ATM services similar to those that Bank Express offers its clients, such as the Business Owner Defendants.

94.    Bank Express believes and therefore avers that BCS hired, or formed a business relationship with, a former employee of Bank Express, namely an individual known as Joone Johe ("Johe").

95.    Bank Express believes and therefore avers that at all times relevant hereto, Johe acted in his individual capacity and as an officer, agent, authorized representative, servant and/or employee of BCS.

96.    Bank Express believes and therefore avers that at all times relevant hereto, BCS acted though its agents, authorized representatives, servants, employees and/or workmen, including, but not limited to Johe.

97.    Prior to being associated with BCS, Johe was employed by Bank Express as a sales representative for its ATM services.

98.    Pursuant to his employment with Bank Express, Johe was responsible for soliciting customers for Bank Express in the geographical areas wherein the Business Owner Defendants are located.

99.    During the term of his employment with Bank Express, Johe had access to confidential information of Bank Express.  Including but not limited to, customer lists, sources of supply, employees, personnel policies, sales and services merchandising, business plans, pricing/billing schedules, and copies of existing Agreements.

100.    All of the confidential information and items set forth above were, and should have been known by Johe, and later BCS, to be competitively sensitive information which Bank Express treated, and Johe, and later BCS, knew or should have known were given to Johe while Johe was held by Bank Express in a position of confidence and trust by Bank Express.  Johe, and later BCS, knew, or should have

known, that Johe was to treat, as confidential, proprietary information inasmuch as the disclosure of such information and items would operate to the detriment of Bank Express, and to the commercial advantage of the competitors of Bank Express, such as BCS.

101.    During the term of Johe's employment with Bank Express, Johe was the representative of Bank Express in dealing with various of Bank Express' customers, including the Business Owner Defendants.

102.    Shortly after leaving the employ of Bank Express, Johe went to work with BCS.

103.    At and around the time Johe left employ with Bank Express, Johe took for his future use and for the future use of BCS, without the express or implied consent or permission of Bank Express, various confidential information and other assets belonging to Bank Express, including but not limited to confidential information concerning the Business Owner Defendants.  This information included but was not limited to files, existing Agreements, pricing information, literature and sales copies of orders directly connected to the Business Owner Defendants and that Johe provided and gave BCS such confidential information.

104.    Johe and BCS have used, and will continue to use, the confidential information belonging to Bank Express to their commercial and competitive advantage and to the commercial and competitive detriment of Bank Express.

105.    Johe and BCS have made disparaging and untrue comments about Bank Express to several of its customers, including the business Owner Defendants, for the sole purpose of causing harm to the business of Bank Express.

106.    Sometime after leaving his employ with Bank Express, Johe, acting on his own behalf and on behalf of BCS, or other BCS representatives, approached one or more of Bank Express' customers, in particular the Business Owner Defendants, for the purpose of inducing the customers of Bank Express to cancel and breach their contracts with Bank Express.

107.    Subsequently, based on the actions of BCS, the Business Owner Defendants all left ATM servicing with Bank Express and went to servicing with BCS.

108.    Bank Express has and will continue to suffer irreparable harm if the actions of Johe and BCS are not enjoined, including but not limited to the loss of customers, profits, business reputation and market share, and the loss of confidential business information.

109.    Accordingly, Bank Express does not have an adequate remedy at law.

WHEREFORE, Bank Express demands judgment against BCS and relief as follows:

A)    Preliminary and permanent injunctive relief enjoining BCS from continuing to use confidential information of Bank Express and continuing to have contact with the customer's of Bank Express, including but not limited to, the Business Owner Defendants;

B)    An order directing BCS to return to Bank Express all of its confidential information in the possession of BCS or under its control;

C)    Compensatory damages; and

D)    Such other relief as this Honorable Court deems appropriate.

## COUNT IV

110.    Paragraphs one through one hundred and nine are incorporated herein by reference as if fully set forth at length.

111.    BCS, through its agents, authorized representatives, servants and/or employees has willfully, repeatedly and without justification made untrue comments to the clients and perspective clients of Bank Express for the sole purpose of causing injury to the business reputation and good will of Bank Express.

112.    As a direct and proximate result of the aforesaid actions of BCS, Bank Express has suffered and will continue to suffer irreparable injury and harm that is likely to continue unless enjoined.

WHEREFORE, Bank Express demands judgment against BCS and relief as follows:

A)    Preliminary and permanent injunctive relief enjoining BCS from disparaging the reputation and goodwill of Bank Express;

B)    Compensatory and punitive damages; and

C)    Such other relief as this Honorable Court deems appropriate.

## COUNT V

113.    Paragraphs one through one hundred and twelve are hereby incorporated herein by reference as if fully set forth at length.

114.    The use by BCS of the confidential information of Bank Express has and will contiue to cause Bank Express immediate and irreparable harm for which Bank Express has no adequate remedy at law.

115.    Said wrongful acts will continue unless enjoined.

WHEREFORE, Bank Express demands judgment against BCS and relief as follows:

A)    An award of compensatory and punitive damages;

B)    An award of reasonable attorney's fees and costs; and

C)    Such other relief as this Honorable court deems appropriate.

COUNT VI

116.    Paragraphs one through one hundred and fifteen are hereby incorporated herein by reference as if fully set forth at length.

117.    BCS on its own behalf has induced certain of the customers of Bank Express to breach their contracts with Bank Express and switch their ATM servicing from Bank Express to BCS, and;

118.    Said acts of BCS were and continue to be without privilege, are otherwise wrongful and tortious, are in complete disregard of the rights of Bank Express and are intended only to benefit BCS, to the complete detriment of Bank Express.

119.    As a result of these actions, Bank Express has suffered and will continue to suffer immediate and irreparable harm for which Bank Express has no adequate remedy at law.

120.    Said wrongful acts will continue unless enjoined.

WHEREFORE, Bank Express demands judgment against BCS and relief as follows:

A)    Preliminary and permanent injunctive relief enjoining BCS's continued tortuous interference with the contractual relations of Bank Express;

B)    An award of compensatory damages;

C)      An award of punitive damages;

D)      Reasonable attorney's fees and costs; and

E)      Such other relief as this Honorable Court deems appropriate.

RESPECTFULLY SUBMITTED:

PIZONKA, McGRORY, REILLEY,
BELLO & McGRORY, P.C.

BY:_____
       JOSEPH P. PIZONKA, ESQ.