IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

PIZONKA, REILLEY, BELLO &
McGRORY, P.C.
BY: DOUGLAS T. GOULD, ESQUIRE
ATTORNEY I.D. NO. 78357
144 East DeKalb Pike, Suite 300
King of Prussia, PA  19406
(610) 992-1300

ATTORNEYS FOR PLAINTIFF
BANK EXPRESS INTERNATIONAL

BANK EXPRESS INTERNATIONAL,
                            Plaintiff

          v.

KANG, BANKCARD SERVICES, et al.,
                            Defendants

CIVIL ACTION NO.: 02-CV-4076

## PLAINTIFF BANK EXPRESS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS AND STRIKE PLAINTIFF'S AMENDED COMPLAINT

Plaintiff Bank Express International, Incorporated ("Bank Express"), by and through its

attorneys, Pizonka, Reilley, Bello & McGrory, P.C., hereby files its Opposition to Defendants'

Motion to Dismiss and Strike Plaintiff's Amended Complaint.  For all the reasons set forth

herein, Plaintiff respectfully requests that this Court deny Defendants' Motion to Dismiss and

Strike Plaintiff's Amended Complaint or, in the alternative, grant discovery on the issue of

Defendants' contacts with this forum.

I.     **INTRODUCTION**

Bank Express initiated this action by filing a Complaint against all Defendants in the

Court of Common Pleas of Montgomery County, Pennsylvania ("Court of Common Pleas").

After filing preliminary objections in state court, all defendants removed this action from the

Court of Common Pleas to this Court.  On or about August 26, 2002, Bank Express filed its Amended Complaint.  Thereafter, on September 10, 2002, defendants served their Motion to Dismiss and Strike Plaintiff's Amended Complaint.  Bank Express therefore files this Opposition thereto.

Bank Express initiated this action after eleven of its business-owner clients improperly terminated their binding contracts with Bank Express within a four-month period.  Bank Express believes, and therefore has alleged in its Amended Complaint, that the eleven business owners terminated their contracts due to inducement by defendant, Credit Card Services, Incorporated, d/b/a Bank Card Services (BCS"), a direct competitor of Bank Express.  It is believed that BCS managed to induce the business owners to terminate their binding contracts by utilizing confidential business information that its agent, former Bank Express employee Joone Johe, misappropriated from Bank Express.

Bank Express alleges that BCS is liable for intentionally inducing the eleven business owners to terminate their binding Pennsylvania contracts with Bank Express.  Bank Express alleges that BCS knowingly, intelligently and voluntarily used confidential information, which BCS improperly obtained from a former Bank Express employee, to unfairly compete with Bank Express.  BCS injured Bank Express when it approached business owners legally contracted with Bank Express and induced them to breach their contracts.

II.    <u>FACTS</u>[1]

A.    **Bank Express And Its Services**

Bank Express is a Pennsylvania corporation authorized to operate pursuant to the laws of the Commonwealth of Pennsylvania and having a principal place of business located at 489 Shoemaker Road, Suite 110, King of Prussia, Pennsylvania 19406.  Bank Express is in the business of enabling business owners to generate revenue through their utilization of automated teller machines ("ATM") at their business locations.

Bank Express enables a business owner to generate revenue by monitoring the accurate electronic processing of each cash withdraw ("transaction"), which a customer makes from an ATM maintained at a business owner's establishment.  Bank Express monitors this electronic processing from its principal place of business in King of Prussia, Pennsylvania.  Bank Express obtains signed contracts from each business owner with which it contracts to provide ATM processing services.

In addition, Bank Express oversees the procurement of ATMs for business owners by securing lease agreements between a business owner and a third-party leasing company.  Bank Express always secures lease agreements for business owners from its principal place of business in King of Prussia, Pennsylvania.  Bank Express does not secure lease agreements for business owners from third-party leasing companies until a business owner has completed and signed a "Lease Application."  The address of Bank Express' principal place of business, in Pennsylvania, is clearly printed across the bottom of each Lease Application provided by Bank Express.  Bank

---

[1] The Statement of Facts is drawn from Bank Express' Amended Complaint.  Since defendants have filed no affidavits in support of this motion, all of the allegations in the Amended Complaint must be deemed true for purposes of this motion.

Express will not begin to contact third-party leasing companies until it has received a business owner's signed Lease Application in Pennsylvania.

Bank Express also sends each business owner monthly transaction summaries and surcharge checks.  The surcharge checks reflect the amount each business owner is entitled to, based upon the preceding month's surcharge revenue.  Each transaction summary and surcharge check is generated and mailed to each business owner from the principal place of business of Bank Express.  The return address for each mailing envelope, containing a transaction summary or surcharge check, is Bank Express' address in King of Prussia, Pennsylvania.  Additionally, each check identifies its maker as "BANK EXPRESS INT'L, INC., 489 SHOEMAKER ROAD, STE 110, KING OF PRUSSIA, PA 19406."

### B.    The Business Owners and Their Breaches

The eleven "Business Owner" defendants to this action are business owners in California who knowingly and voluntarily entered contracts with Bank Express. [2]  The Owner Defendants entered these contracts with Bank Express, whereby each Owner Defendant requested that Bank Express perform automated teller machine processing services ("processing services") for five years.  Bank Express performed all of its contractual obligations, the amounts of money charged by Bank Express were fair and reasonable for its processing services, and Plaintiff's prices reflected the amounts the Owner Defendants agreed to pay Bank Express.

Each and every Owner Defendant was on notice that he/she/it was forming a contractual relationship with a Pennsylvania corporation.  Bank Express and the Owner Defendants utilized two different drafts of contracts that are at issue in this litigation.

---

[2] For the purposes of this Response, Bank Express will refer to these Defendants collectively as the "Owner Defendants."

The first contract draft begins "WHEREAS, Bank Express International, Inc. (BEI), a Pennsylvania Corporation located at 489 Shoemaker Road Suite 110, King of Prussia, Pennsylvania 19406 is in the business of providing Automated Teller Machine [ ] processing services."  Paragraph eleven of the first contract draft also states "[t]his contract shall not be effective until accepted by BEI and signed by its duly authorized representative."  Paragraph twelve of the first contract draft also states "[t]his contract shall be governed by, construed and enforced in accordance with the laws of the Commonwealth of Pennsylvania."  Seven of the Owner Defendants signed contracts containing this language.

The second draft of the contracts between Bank Express and the Owner Defendants identifies Plaintiff's original business address, in large font, across the bottom of the contract as "8 Cynwyd Road, Suite 100, Bala Cynwyd, Pa  19004."  Three of the Merchant Defendants signed the second draft of Plaintiff's contract.

The eleventh named Owner Defendant, Yeo Jung Lee and/or Secatide, Incorporated is an individual and/or is a corporation trading as Hiway Liquor ("Hiway"), with a business address of 1950 Fremont Blvd., Seaside, CA 93955.  Between May 2, 2000 and May 3, 2002, Bank Express attempted to secure Hiway a lease agreement with four (4) different leasing companies.  All attempts were rejected, as Hiway had derogatory credit, insufficient credit and/or minimal personal credit.  All attempts to secure Hiway a lease agreement were made by Bank Express from its principal place of business in King of Prussia, Pennsylvania.  On or about May 3, 2000, Bank Express leased an ATM from ACH LEASING LLC and leased the ATM to Hiway in reliance upon a five year ATM Site Location Agreement ("Location Agreement") between Bank Express and Hiway.  Pursuant to the Location Agreement, Bank Express was to pay Hiway a

monthly fee for the placement of the ATM and a percentage of each surcharge.  The Location

Agreement specifically identifies Bank Express as the "Operator."  It also specifically states

"[t]he jurisdiction and venue for any legal proceeding to interpret or enforce this agreement shall

be in the county where [Bank Express] . . .maintains its principal place of business or residence."

The Location Agreement identifies this principal place of business of Bank Express as its former

location at, 8 Cynwyd Rd., Suite 100, Bala Cynwyd, Pa 19004.

### C.    BCS and Its Misconduct

BCS, like Bank Express, is in the business of providing ATM services to companies such

as the Owner Defendants.  Bank Express alleges that in February 2002, BCS induced eight

business owners to breach their Pennsylvania Contracts with Bank Express; and in March 2002,

BCS induced two additional business owners to breach their Pennsylvania Contracts; finally, in

May 2002, one additional inducement occurred. Bank Express contends that BCS knew that

Bank Express was a Pennsylvania corporation, with a principal place of business in

Pennsylvania, at the time BCS approached the relevant business owners, and that BCS was

knowingly, intelligently and willfully committing intentional, wrongful acts against a

Pennsylvania corporation.  Bank Express alleges that BCS was in possession of copies of the

relevant Pennsylvania contracts with which it intentionally interfered.

At or about the time it induced the termination of the Bank Express Contracts, BCS hired

a former employee of Bank Express, namely an individual known as Joone Johe ("Johe") and at

all relevant times thereafter, Johe acted in his individual capacity as an officer, agent, authorized

representative, servant and/or employee of BCS.  Prior to being employed by BCS, Johe was

employed by Bank Express as a sales representative for its ATM services.  Pursuant to his

6

employment with Bank Express, Johe was responsible for soliciting customers for Bank Express in the geographic areas where the Owner Defendants are located.

During the term of his employment with Bank Express, Johe had access to Bank Express' confidential information, including, but not limited to, customer lists, sources of supply, employees, personnel policies, sales and services merchandising, business plans, existing agreements, and pricing/billing schedules.  Bank Express alleges that all of the confidential information and items set forth above were, and should have been known by Johe, and later BCS, to be competitively sensitive information which Bank Express treated, and Johe, and later BCS, knew or should have known were given to Johe while Johe was held by Bank Express in a position of confidence and trust.  Johe, and later BCS, knew, or should have known, that Johe was to treat, as confidential, proprietary information inasmuch as the disclosure of such information and items would operate to the detriment of Bank Express, and to the commercial advantage of Plaintiff's competitors, such as BCS.  During the term of Johe's employment with Bank Express, Johe was Plaintiff's representative in dealing with various of Plaintiff's customers, including the Owner Defendants.

When he left employ with Bank Express, Johe took for his future use and for the future use of BCS, without express or implied consent or permission of Bank Express, various confidential information and other assets belonging to Bank Express, including but not limited to confidential information concerning the Owner Defendants.  This information included but was not limited to files, agreements, pricing information, literature and sales copies of orders directly connected to the Owner Defendants, and Johe provided and gave BCS this confidential information.

Sometime after leaving his employ with Bank Express, Johe, acting on his own behalf and on behalf of BCS, or other BCS representatives, approached one or more of Plaintiff's customers, in particular the Owner Defendants, for the purpose of inducing Plaintiff's customers to cancel and breach their contracts with Bank Express.  Subsequently, The Owner Defendants all left ATM servicing with Bank Express and went to servicing with BCS.

Bank Express alleges that Johe and BCS used, and will continue to use, the confidential information belonging to Bank Express to their commercial and competitive advantage and to the commercial and competitive detriment of Bank Express and further, that Johe and BCS have made disparaging and untrue comments about Bank Express to several of Plaintiff's customers, including the Owner Defendants, for the sole purpose of causing harm to Bank Express' business.

### D.    Defendants' Motion to Dismiss

In their Motion, the defendants now come to this Court and seek to avoid answering for their wrongful acts within the forum state where their acts caused significant monetary damage.  Because, however, the facts as set forth in Plaintiff's Amended Complaint are sufficient to establish the Court's jurisdiction and venue, the defendants' Motion should be denied.  In the alternative, in accordance with the Third Circuit's directive in *Renner v. Lanard Toys Limited*, 33 F.3d 277 (1994), Bank Express requests the Court to order a period of discovery so that Bank Express may determine the full scope and nature of defendants' contacts with this forum.

## III.    <u>ARGUMENT</u>

### A.    The Court Has Personal Jurisdiction Over The Non-Resident Defendants

The defendants challenge the Court's in personam jurisdiction, even though the following facts are either uncontested or must be deemed true for purposes of this motion:

- The Owner Defendants knowingly delivered to Pennsylvania for final execution, a contract governed by Pennsylvania law, under which the Owner Defendants entered into a long-term contract for Bank Express, a Pennsylvania corporation located in Pennsylvania, to render services in Pennsylvania for the Owner Defendants;

- The Owner Defendants reaped the benefits of this contract by repeatedly and without objection accepting payment forwarded to them from Pennsylvania and cashing Bank Express' checks, which were drawn on a Pennsylvania bank;

- BCS interfered with the above-described contractual relationships, knowing that its interference would cause harm in Pennsylvania, by misappropriating Bank Express' confidential information, and inducing the Owner Defendants to break their Pennsylvania contracts; and

- The harm caused by the defendants' conduct is felt in Pennsylvania, because Bank Express' principal place of business is located in Pennsylvania, and its services were performed for the Owner Defendants from this Commonwealth.

Since, it is well-settled, defendants who thus purposefully avail themselves of the forum state's laws and knowingly cause harm in the forum are subject to personal jurisdiction, Defendants' motion to dismiss should be denied.

Fed. R. Civ. P. 4(e) authorizes the Court to exercise jurisdiction over the non-resident defendants "to the extent permissible under the law of" Pennsylvania. *Pennzoil Prod. Co. v. Colelli & Assocs., Inc.,* 149 F.3d 197, 200 (3d Cir. 1998). Under Pennsylvania's long-arm statute, 42 Pa. C.S.A. § 5322(b), the Court may assume in personam jurisdiction "to the constitutional limits of the due process clause of the fourteenth amendment." *Mellon Bank (East) PSFS, Nat'l Ass'n v. Farino*, 960 F.2d 1217, 1221 (3d Cir. 1992). Under the well-settled due-process standard, the Court has in personam jurisdiction where a defendant has "minimum contacts" with the forum, and the Court's exercise of jurisdiction would not frustrate "traditional

notions of fair play and substantial justice." *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).[3]

The "minimum contacts" necessary to satisfy the requirements of the due process clause are a function of the nexus among the defendant, the forum, and the litigation, and they exist whenever the defendants' acts are of such character that the defendant "may 'reasonably anticipate being haled into court" in the forum state. *General Elec. Co. v. Deutz AG,* 270 F.3d 144, 151 (3d Cir. 2001); *Imo Indus., Inc. v. Kiekert AG,* 155 F.3d 254, 259 (3d Cir. 1998). Here, all defendants have such minimum contacts with Pennsylvania. The Owner Defendants purposefully availed themselves of Pennsylvania's laws by entering into Pennsylvania contracts, for a Pennsylvania corporation to render services in Pennsylvania. Similarly, BCS is subject to personal jurisdiction in Pennsylvania on the basis of its intentional interference with these contracts, and the injury that it has inflicted in Pennsylvania.

### 1. The Owner Defendants Have Minimum Contacts With Pennsylvania Arising From Their Servicing Relationship With Bank Express

In the Amended Complaint, Bank Express asserts breach of contract and unjust enrichment claims against the Owner Defendants. The claims arise out of the Owner Defendants' agreements with Bank Express for the provision of money access services.

----

[3] Defendants do not argue in their Memorandum of Law that it would be unfair for them to respond to this lawsuit in Pennsylvania. In any event, it is clear that the defendants could not discharge their burden with respect to such an argument. It is well-settled that the mere burden of having to litigate in a foreign forum falls short of reaching constitutional significance. *See Sawtelle v. Farrell*, 70 F.3d 1381, 1395 (1st Cir. 1995). The defendants entered into, and then breached, long-term Pennsylvania contracts, and have evidenced by their removal of the case from state court, and subsequent joint filing of their motion to dismiss, that they are more than capable of responding to the claims. Indeed, it seems likely that BCS, for obvious reasons, has taken responsibility for their defense.

Although they do not (and cannot) dispute that they knew they were contracting with a Pennsylvania entity for its services, some of which they knew were rendered in Pennsylvania, the Owner Defendants seek to escape answering in this jurisdiction for their acts by erroneously proposing that there can never be jurisdiction to adjudicate contract-based claims against a non-resident unless the non-resident "initiated" the contractual relationship. Based on this fallacy, the Owner Defendants argue that did not "initiate" their contracts with Bank Express, and therefore, conclude that they cannot be subject to jurisdiction. *See* Defs.' Memo. at 4-5.

The Owner Defendants' proposed basis for avoiding Bank Express' claims is unavailing for two reasons. First, it is a plain misstatement of the law for the Owner Defendants to suggest that the existence of minimum contacts is determined based solely on a narrow inquiry into how a contractual relationship was "initiated." To the contrary, as the Third Circuit has recently explained: "[i]t is not significant that one or the other party initiated the relationship." *General Elec.*, 270 F.3d at 151. Rather, the analysis looks to "the facts as a whole," including whether the parties entered into a long-term relationship and otherwise engaged in activity that constitutes something more than mere "informational communication." *Id.*; *Remick*, 238 F.3d at 256. Second, even if it were true that "initiation" was the touchstone of personal jurisdiction, discovery would be necessary to ascertain the manner in which the contracts in question were initiated.

The Supreme Court long ago abandoned inflexible analyses, such as the "place of initiation" analysis the Owner Defendants propose. *See International Shoe Co. v. Washington*, 326 U.S. 310 (1945). The more flexible modern approach is illustrated by *Remick v. Menfredy*, 238 F.3d 248 (3d Cir. 2001), in which the Court of Appeals established that "in many instances,

personal jurisdiction can arise primarily from a nonresident defendant's contract with a forum resident." *Remick*, 238 F.3d at 256. In *Remick*, the Third Circuit held that the district court had jurisdiction "as a matter of law" where "the[] facts as a whole" indicated that the contacts were something more than mere "informational communications." *Id*. The "initiation" of the contractual relationship was just one of many facts that the *Remick* Court considered in its analysis. Under *Remick*, other facts which indicate that contacts are more than mere "informational communication" include whether the agreement was executed or delivered in the forum, whether the agreement was subject to the forum state's law, whether payment was sent to or from the forum, whether services were rendered in the forum, and whether the contracting party knew the plaintiff was located in the forum. *See Remick*, 238 F.3d at 256. In addition, in the commercial context, it is of particular significance that the parties intended to, or did, "establish a common venture extending over a substantial period of time." *General Elec.*, 270 F.3d at 151.

In the instant case, as in *Remick*, the facts as a whole indicate that the Owner Defendants did much more than merely engage in "informational communication" to Pennsylvania. Rather, the Amended Complaint demonstrates that the each of the Owner Defendants knowingly delivered to Pennsylvania for final execution, a contract governed by Pennsylvania law, under which the Owner Defendants retained Bank Express, a Pennsylvania corporation they knew was located in Pennsylvania, to render services in Pennsylvania for the Owner Defendants for a substantial period of time. The Owner Defendants reaped the benefits of these contracts by repeatedly accepting payment forwarded to them from Pennsylvania and cashing Bank Express' checks, which were drawn on a Pennsylvania bank. The Owner Defendants' establishment of a

"common venture extending over a substantial period of time" and other conduct involving

Pennsylvania, is precisely the kind of conduct that the *Remick* Court considered, and held to rise

above mere "informational communication," and thus is sufficient to qualify as one of the "many

instances [in which] personal jurisdiction can arise primarily from a nonresident defendant's

contract with a forum resident." *Remick*, 238 F.3d at 256. Accordingly, as in *Remick,* this Court,

"as a matter of law," has personal jurisdiction over the Owner Defendants. *Id*. at 257.

Even if the "minimum contacts" analysis could be decided solely by reference to the

initiation of the contract, as the Owner Defendants erroneously propose, the Amended Complaint

should not be dismissed, but rather, it would be necessary to conduct a period of discovery

regarding the circumstances under which the contracts were initiated and the nature of the Owner

Defendants' other contacts with the forum. *See Renner v. Lannard Toys Ltd.*, 33 F.3d 277, 283-

84 (3d Cir. 1994) (vacating order of dismissal entered without affording plaintiff opportunity for

discovery on issues of personal jurisdiction).

### 2. BCS Has Minimum Contacts With Pennsylvania Arising From Its Intentional Torts

BCS implausibly claims that it is not subject to personal jurisdiction in Pennsylvania,

based on its intentional torts. It is well-settled, however, that an entity that targets its intentional

acts to cause harm to an in-forum plaintiff and its contracts—as BCS did here—is subject to

personal jurisdiction pursuant to the so-called "tort-out/harm-in" provision of Pennsylvania's

long-arm statute. *See, e.g., Supra Medical Corp. v. McGonigle*, 955 F. Supp. 374, 381-83 (E.D.

Pa. 1997) (discussing long-arm statute, and finding jurisdiction over non-resident defendants

based on misappropriation of Pennsylvania plaintiff's trade secrets). Accordingly, BCS is

13

subject to personal jurisdiction in this forum with respect to Bank Express' claims for

misappropriation, disparagement, and tortious interference.

When an intentional tort is alleged, the Third Circuit has directed that the question of

personal jurisdiction must be answered by reference to the three-pronged "effects" test suggested

by the Supreme Court in *Calder v. Jones*, 465 U.S. 783 (1984). Under *Calder's* "effects" test,

the Court personal jurisdiction exists if:

> (1)    The defendant committed an intentional tort;
>
> (2)    The plaintiff felt the brunt of the harm in the forum such that the forum
>        can be said to be the focal point of the harm suffered by the plaintiff as a
>        result of that tort; [and]
>
> (3)    The defendant expressly aimed his tortious conduct at the forum such that
>        the forum can be said to be the focal point of the tortious activity.

*Remick*, 238 F.3d at 258 (quoting *Imo Indus., Inc. v. Kiekert AG*, 155 F.3d 254, 265-66 (3d Cir.

1998)).

Notwithstanding BCS' conclusory arguments to the contrary, it is obvious that the first

two prongs of the "effects" test are satisfied in this case.[4] "Misappropriation," "disparagement,"

and "tortious interference" are all intentional torts, which trigger application of the second and

third prongs of the test. The "brunt of the harm" arising from BCS' misconduct has been felt in

Pennsylvania, because: 1) Bank Express is a Pennsylvania corporation with its principal place of

business in Pennsylvania, 2) the contracts with which BCS interfered are "centered" in

Pennsylvania, as discussed above, and 3) Bank Express conducts its business in Pennsylvania.

*See Remick*, 238 F.3d at 258 (noting that "brunt of the harm" prong was satisfied where

plaintiff's "professional activities are centered in Pennsylvania.").

---

[4] To the extent either of the first two prongs of <u>Calder</u>'s effects test is not satisfied, Bank Express
should be entitled to discovery and/or the opportunity to amend its Complaint to satisfy the tests.

The final prong of *Calder*'s effects test is also satisfied, because BCS targeted its activities against Bank Express, in Pennsylvania. As the Third Circuit made abundantly clear in *Remick*, "alleged tortious conduct [that is] expressly aimed at injuring [an in-forum plaintiff] where he lives and works . . . is sufficient to satisfy" the third prong of *Calder's* "effects" test. 238 F.3d at 260. As in *Remick*, BCS has targeted Bank Express in Pennsylvania, because BCS injured Bank Express, knowing at all relevant times that Bank Express was a Pennsylvania corporation conducting its monitoring and other services out of its Pennsylvania place of business.

BCS seeks to avoid the outcome dictated by Remick by arguing that "[a]iming the torts at the plaintiff is not a sufficient allegation under the 'focal point' test." Defs.' Memo. at 9. This abstract statement, however, is inapposite in cases where—as here—the conduct has been aimed at an "in-forum" plaintiff, and thus BCS' statement serves only to emphasize that jurisdiction is proper under the facts of this case. The Third Circuit in *Remick* was careful to distinguish situations in which the defendant caused harm by directing conduct against the plaintiff in a different forum from those in which the defendant caused the harm by directing its acts against the interests of an in-forum plaintiff. *See* 238 F.3d at 260 (distinguishing Imo Industries on the grounds that that was a case in which "the German defendant's alleged tortious conduct appeared to have been expressly aimed at injuring a French company and not the in-forum plaintiff"). As in *Remick*, this is clearly a case in which the defendant has knowingly directed its conduct against an in-forum plaintiff. Thus, as in *Remick*, BCS must answer in this forum for the harm it has intentionally caused here through its acts of misappropriation, disparagement, and intentional interference. *See also McGonigle*, 955 F. Supp. at 382-83 (holding that jurisdiction existed over

15

non-residents that caused harm in Pennsylvania by misappropriating Pennsylvania corporation's confidential information).

*Remick* also demonstrates that BCS' knowing interference with Bank Express' Pennsylvania contracts is an alternate basis for satisfaction of *Calder's* "targeting" prong. In *Remick*, the Third Circuit held that jurisdiction could be asserted over the defendant, based on the defendant's intentional interference with Pennsylvania contracts. *See* 238 F.3d at 260. Similarly, in the present case, BCS has interfered with Bank Express' Pennsylvania contracts. As the Amended Complaint demonstrates, each of the Owner Defendants knowingly delivered to Pennsylvania for final execution, a contract governed by Pennsylvania law, under which the Owner Defendants entered into a long-term contract for Bank Express, a Pennsylvania corporation they knew was located in Pennsylvania, to render services in Pennsylvania for the Owner Defendants. The Owner Defendants reaped the benefits of this contract by repeatedly accepting payment forwarded to them from Pennsylvania and cashing Bank Express' checks, which were drawn on a Pennsylvania bank. BCS had knowledge of all of these facts and the Pennsylvania nexus, because it employed Johe—Bank Express' former agent—and misappropriated his knowledge of the Owner Defendants relationships. BCS is thus subject to jurisdiction in Pennsylvania for its intentional acts of interference against these Pennsylvania relationships. *Remick*, 238 F.3d at 260.

Finally, to the extent the Court holds that the facts are not yet sufficiently developed to determine that BCS sufficiently "targeted" its activities toward Bank Express, Bank Express is entitled to a period of discovery to investigate the issue of BCS' knowledge and intent. *Renner*, 33 F.3d at 283-84.

**B.    Venue Is Appropriate In This Forum With Respect To Both The Owner Defendants And BCS**

Venue is appropriate in this forum as a substantial part of the alleged events or omissions giving rise to Plaintiff's claims occurred in this Commonwealth.  As noted above, the Owner Defendants knowingly submitted to Pennsylvania, for final execution, contracts governed by Pennsylvania law, under which the Owner Defendants entered into long-term contracts with a Pennsylvania corporation, headquartered in Pennsylvania, for Bank Express to render services from Pennsylvania for the Owner Defendants.  Additionally, BCS committed at least eleven intentional acts specifically aimed at a Pennsylvania corporation, with its principal place of business in Pennsylvania, for the specific purpose of causing injury to that corporation.

Apparently recognizing that venue has been adequately alleged, Defendants spend considerable effort in their Memorandum of Law setting forth legal authority supporting the supposition that this Court can transfer venue in this matter.   It should be noted at the outset that the burden of establishing that venue should be transferred rests with the movant.  *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879-80 (3d Cir. 1995).  Likewise, the burden of establishing that the balance of proper interests weighs in favor of transfer rests with the movant.  *Id*.  Additionally, in ruling on a motion to transfer, "plaintiff's choice of venue should not be lightly disturbed."  Id. (citation and internal quotation omitted).  Notwithstanding their heavy burden in this regard, the defendants do not provide this Court with authority indicating that the Court should transfer venue.  This is the case as much authority supports Plaintiff's contention that where defendants breach long-term contracts (or commit intentional torts against a plaintiff in the relevant forum) venue is appropriate where the plaintiff resides.[5]

---

[5] It should be noted that a careful review of all pleadings in this matter do not confirm that Credit

     1.     **Venue Is Appropriate In This Forum With Regard To The Owner Defendants As A Substantial Part Of The Alleged Events Or Omissions Giving Rise To Plaintiff's Claims Occurred In This Commonwealth**

As discussed at length above, the Owner Defendants intentionally created long-term business relationships with Bank Express whereby Bank Express was obligated to provide extensive servicing and electronic processing of transactions for the Owner Defendants. Additionally, each Owner Defendant received monthly statements and surcharge checks mailed to them by Bank Express from Pennsylvania. Indeed, the only alleged facts in this matter show that the vast majority of the substantial acts of performance under the parties' contracts occurred within this forum. More importantly, the contracts at issue between the Owner Defendants and Bank Express where executed by Bank Express in Pennsylvania and became effective in Pennsylvania.[6]

---

Card Services, Incorporated, dba BankCard Services is/are California Corporation(s). Nor is it confirmed that either do not maintain continuous and systematic contacts with Pennsylvania. In fact, internet searches suggest that both "BankCard Services" and "Credit Card Service" offer Pennsylvania residents the ability to contract with both entities over the internet. It is unknown to Plaintiff at this time the extent of BankCard Services and Credit Card Services business dealings within the forum and discovery is necessary to determine the full extent of same.

[6] The Owner Defendants ignore a long line of cases that hold that jurisdiction and venue are appropriate in the forum where the contracts at issue were executed. *See Consolidated Rail Corp. v. New England Central R.R., Inc.*, 23 F.Supp.2d 549; *West Coast Entertainment Corp. v. Bonafide Mngmnt System, Inc.*, 1999 WL 740391 (E.D. Pa.); *Snider v. Slatkin, Inc.*, 105 F. Supp.2d 428 (E.D.Pa. 2000); *DiMark Marketing, Inc. v. Losisiana Health Service & Indemnity Co.*, 913 F.Supp. 402 (E.D.Pa. 1996); *Babn Technologies Corp. v. Bruno*, 25 F. Supp.2d 593 (E.D.Pa. 1998). As these cases make clear, a significant ground for a plaintiff to assert proper venue against a non-resident defendant is based upon the location of contract formation.

Instead, defendants cite *Franklin Interiors v. Wall of Fame Mngmt Co.*, Inc., 510 Pa. 597, 511 A.2d 761 (Pa. 1986) for the proposition that the contracts at issue are actually California contracts. This interpretation of *Frankin* is strained. Defendants clearly ignore the language in Franklin which states:

### 2. Venue Is Appropriate In This Forum With Regard To BCS As BCS Committed Intentional Torts Against Bank Express With The Intended Result Of Injuring Bank Express In This Forum.

There is a long series of federal court opinions that support Plaintiff's assertion that BCS is amendable to both jurisdiction and venue in this forum. *See Union Carbide Corp. v. UGI Corp.*, 73 F.2d 1186, 1189 (5th Cir. 1984) (held that jurisdiction in Texas court was properly grounded on defendant's out-of-state acts tortiously interfering with plaintiff's contract with another corporation; out-of-state acts gave rise to injury; *see also Lake v. Lake*, 817 F.2d 1416, 1423 (9th Cir. 1987) (attorney who wrongfully obtained ex parte order in California had "purposeful contacts" with Idado where effects of order would be felt there where plaintiffs resided); *Panavision Int'l v. Toeppen*, 141 F.3d 1316 (9th Cir. 1998) (holding that defendant who attempted to extort money from a California corporation from outside of California held to have directed his activities toward that state); *Kumarelas v. Kumarelas*, 16 F.Supp.2d 1249 (D. Nevada 1998) (while in California, defendant coercively influenced the decedent to change the terms of a trust thus causing plaintiff/beneficiary residing in Nevada to suffer losses; jurisdiction held proper in Nevada under the "effects test" because defendant "must have known" that it was likely that plaintiff would feel the effects of defendant's wrongful conduct in Nevada); *National*

---

At best, the document of record, without more, is nothing other than an offer by Appellants to deal with Appellee under the terms and conditions of the written offer. Until accepted by the Appellee in the mode and manner expressly provided by the terms of the offer, this document remains an unaccepted offer and cannot, in itself, be considered a binding contract. This is hornbook law. Id. at 600.

It should be noted that *Franklin* dealt with a document that was unsigned by a required party. The Court specifically ruled that the unsigned document was merely an offer requiring all signatures before becoming a contract. This is identical to the facts before this Court. In this case the Owner Defendants submitted to Bank Express contracts that required a signature from a authorized representative of Bank Express. Thus, when viewed against Franklin, it is clear that the "contracts" as submitted by the Owner Defendants were mere offers requiring execution by Bank Express to become actual contracts. As noted by Franklin, this is hornbook law.

*Occupational Health Servs., Inc. v. Advanced Indus. Care*, 50 F.Supp.2d 1111 (N.D. Okla. 1998) (California subcontractor who interfered with Oklahoma contract amenable to personal jurisdiction in Oklahoma even though all its acts occurred outside the state; held that party who tortiously interferes with contract of another is subject to jurisdiction in the state where the property rights under the contract exist); *Centronics Data Computer Corp. v. Mannesmann, A.G.*, 432 F.Supp. 659, 666-67 (D.N.H. 1977) (though defendant's tortious acts occurred outside of New Hampshire, they were aimed specifically at corporation who resided there, thus jurisdiction held proper.) Accordingly, as with the owner defendants, venue is proper in this jurisdiction as to BCS.

### C.    The Amended Complaint is Legally Sufficient

In the final part of their Motion, the defendants allege a series of asserted "deficiencies" in the Amended Complaint, which they contend, require the Court to order Bank Express to re-plead. The asserted "deficiencies" amount to nothing more than defendants' attempts to impose pleading requirements that do not exist in law, or to argue the sufficiency of evidence, which is not properly raised in a motion under Rule 12. Moreover, the defendants make virtually no effort to ground their complaints in legal authority. The fact of the matter is that Bank Express' detailed Amended Complaint is legally sufficient, and none of the defendants' arguments constitute sufficient grounds to grant for dismissal. In any event, Bank Express would be entitled to remedy any valid objection by filing an amended pleading.

**IV.**    **CONCLUSION**

For all of the foregoing reasons, plaintiff Bank Express respectfully requests the Court to deny defendants' motion pursuant to Fed. R. Civ. P. 12.

RESPECTFULLY SUBMITTED:

PIZONKA, MCGRORY, REILLEY,
BELLO & MCGRORY, P.C.

BY: _____
    DOUGLAS T. GOULD, ESQ.

21

## <u>CERTIFICATE OF MAILING</u>

I, H. BRUCE HANSON hereby certificate that a true and correct copy of the foregoing

Plaintiff Bank Express' Opposition To Defendants' Motion To Dismiss And Strike Plaintiff's

Amended Complaint has been served upon the following counsel by first class mail, postage pre-

paid on September 27, 2002.

David H. Oh, Esquire
The Law Firm of David Oh, PC
121 South Broad Street
14th Floor
Philadelphia, PA  19107


_____
H. Bruce Hanson