PIZONKA, REILLEY, BELLO & McGRORY, P.C.
BY: DOUGLAS T. GOULD, ESQUIRE
ATTORNEY I.D. NO. 78357
144 East DeKalb Pike, Suite 300
King of Prussia, PA  19406
(610) 992-1300                                    ATTORNEYS FOR PLAINTIFF

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| | : | |
| BANK EXPRESS INTERNATIONAL | : | CIVIL ACTION NO.: 02-CV-4076 |
| Plaintiff | : | |
| | : | |
| v. | : | |
| | : | |
| KANG, BANKCARD SERVICES, et al. | : | |
| Defendants | : | |

AFFIDAVIT OF TAEK IM KIM, CHIEF EXECUTIVE OFFICER OF PLAINTIFF,
BANK EXPRESS INTERNATIONAL

I, Taek Im Kim, being duly sworn, state:

1.      I am the Chief Executive Officer of Bank Express International,

Incorporated ("Bank Express"), a Pennsylvania corporation authorized to operate

pursuant to the laws of the Commonwealth of Pennsylvania and having a principal place

of business located at 489 Shoemaker Road, Suite 110, King of Prussia, Pennsylvania

19406.  Bank Express was incorporated on or about November 9, 1998.

2.      I make this Affidavit based upon my personal knowledge, or where

indicated, based upon information currently known to me, which I believe is true and

correct.

3.      Bank Express is in the business of enabling business owners to generate

revenue though their utilization of automated teller machines ("ATM") at their business

locations.  Bank Express enables a business owner to generate revenue by monitoring the

accurate electronic processing of each cash withdraw ("transaction"), which a customer makes from an ATM maintained at the business owner's establishment. Bank Express monitors this electronic processing from its principal place of business in King of Prussia, Pennsylvania.

4.    Bank Express often oversees the procurement of ATMs for business owners by securing lease agreements between a business owner and a third-party leasing company. Bank Express always secures lease agreements for business owners from its principal place of business in King of Prussia, Pennsylvania. Additionally, Bank Express does not secure lease agreements for business owners from third-party leasing companies until a business owner has completed and signed a Bank Express Lease Application. The address of Bank Express' principal place of business, in Pennsylvania, is clearly printed across the bottom of each Lease Application. Bank Express will not begin to contact third party leasing companies until it has received a business owner's signed Lease Application in Pennsylvania.

5.    Bank Express also provides business owners with network monitoring for service or maintenance requirements and notifies business owners of those requirements. Bank Express provides these services from its principal place of business in King of Prussia, Pennsylvania. Bank Express also provides necessary paper products for its customer's ATMs from its principal place of business upon request.

6.    Additionally, Bank Express accepts calls concerning technical difficulties with its customers' ATMs and arranges the servicing of the malfunctioning ATMs. Bank Express provides this service from its principal place of business in King of Prussia, Pennsylvania. Bank Express provides a toll free number that is affixed to each ATM

procured for a business owner and business owners can, and do, call Bank Express directly when experiencing malfunctions.

7.    Bank Express sends each business owner monthly transaction summaries and surcharge checks.  The surcharge checks reflect the amount each business owner is entitled to, based upon the preceding month's surcharge revenue.  Each transaction summary and surcharge check is generated and mailed to each business owner from the principal place of business of Bank Express.  The return address for each mailing envelope, containing a transaction summary or surcharge check, is Bank Express' address in King of Prussia, Pennsylvania.  Currently, each check identifies its maker as "**BANK EXPRESS INT'L, INC.,** 489 SHOEMAKER ROAD, STE 110, KING OF PRUSSIA, PA 19406."  Prior to July 2000, each transaction summary and surcharge check was generated and mailed from the former address of Bank Express located in Bala Cynwyd, Pennsylvania.  Each such transaction summary envelope and surcharge check (with envelope) was similarly embossed with Bank Express' former address in Bala Cynwyd.

8.    Based upon information and belief, Defendant, Soo Y. Yang, is an individual who is trading as Rancho Market ("Rancho"), with a business address of 930 23rd Street, Richmond, CA 94804.

9.    Based upon information and belief, on or about November 11, 1999, Rancho submitted a Bank Express Lease Application, to Bank Express, whereby Rancho requested Bank Express secure Rancho a lease agreement for an ATM with a third party leasing company.  Rancho's Lease Application clearly identifies the former principal place of business of Bank Express across the bottom as "8 Cynwyd Road, Suite 100, Bala

Cynwyd, PA 19004." A copy of Rancho's Lease Application is attached to Plaintiff's Amended Complaint as Exhibit "A."

10.    Based upon information and belief, on or about November 15, 1999, Bank Express secured Rancho a lease agreement with ACH Leasing. This lease agreement was secured by Bank Express from its principal place of business in King of Prussia, Pennsylvania.

11.    Based upon information and belief, on or about November 25, 1999, Rancho entered a written agreement ("Rancho Agreement") with Bank Express whereby Bank Express offered and Ranco accepted, monthly electronic automated teller machine processing services from Bank Express for a period of five (5) years.

12.    Based upon information and belief, the Rancho Agreement was signed by Rancho's agent on November 19, 1999 and became effective when accepted and signed by me on November 25, 1999 in King of Prussia, Pennsylvania. A copy of the Rancho Agreement is attached to Plaintiff's Amended Complaint and marked as Exhibit "B."

13.    Based upon information and belief, between December 1999 and February 2002, Rancho received and cashed monthly surcharge checks mailed by Bank Express to Rancho. Bank Express mailed said checks to Rancho either from its principal place of business in King of Prussia or its former principal place of business in Bala Cynwyd.

14.    Based upon information and belief, on or about February 2002 Rancho breached the Rancho agreement by unilaterally terminating Bank Express' services before the expiration of the Rancho Agreement's term and by refusing, despite demand, to return its ATM processing servicing to Bank Express.

15. Based upon information and belief, Defendant, Doo Young Lee, is an individual who is believed to be trading as Felton Fair Liquors ("Felton"), with a business address of 6273 Graham Hill Raod, Felton, CA 95018.

16. Based upon information and belief, on or about January 22, 2001, Felton submitted a Bank Express Lease Application, to Bank Express, whereby Felton requested Bank Express secure Felton a lease agreement for an ATM with a third party leasing company. Felton's Lease Application clearly identifies the principal place of business of Bank Express across the bottom as "Bank Express International 489 Shoemaker Rd. Ste. 110, King of Prussia, PA 19406." A copy of Felton's Lease Application is attached hereto and marked as Exhibit "C."

17. Based upon information and belief, between January 22, 2001 and January 25, 2001, Bank Express attempted to secure a lease agreement for Felton with three different leasing companies. These efforts occurred from the principal place of business of Bank Express. All three of these attempts to secure a least agreement were rejected by the leasing companies. On or about February 1, 2001, Bank Express secured Felton a lease agreement with LEASECOMM. This lease agreement was secured by Bank Express from its principal place of business in King of Prussia, Pennsylvania.

18. Based upon information and belief, on or about February 2, 2001, Felton entered a written agreement ("Felton Agreement") with Bank Express whereby Bank Express offered and Felton accepted, monthly electronic automated teller machine processing services from Bank Express for a period of five (5) years.

19. Based upon information and belief, Felton's Agreement was signed by Felton's agent on February 1, 2001 and became effective when accepted and signed by

me on February 2, 2001, in King of Prussia, Pennsylvania.  A copy of the Felton

Agreement is attached to Plaintiff's Amended Complaint and marked as Exhibit "D."

20.    Based upon information and belief, between March 2001 and February

2002, Felton received and cashed monthly surcharge checks mailed by Bank Express to

Felton.  Bank Express mailed said checks to Felton from either its principal place of

business in King of Prussia or its former Principal place of business in Bala Cynwyd,

Pennsylvania.

21.    Based upon information and belief, on or about February 2002, Felton

breached the Felton Agreement by unilaterally terminating Bank Express' services before

the expiration of the Felton Agreement's term and by refusing, despite demand, to return

its ATM processing servicing to Bank Express.

22.    Based upon information and belief, Defendant, Jenny Yu, is an individual

trading as Mayfair Market ("Mayfair"), with a business address of 1 Mayfair Drive,

Salinas, CA 94087.

23.    Based upon information and belief, on or about March 3, 2001, Mayfair

submitted a Bank Express Lease Application, to Bank Express, whereby Mayfair

requested Bank Express secure Mayfair a lease agreement for an ATM with a third party

leasing company.  Mayfair's Lease Application clearly identifies the principal place of

business of Bank Express across the bottom as "Bank Express International 489

Shoemaker Rd. Ste. 110, King of Prussia, PA 19406."  A copy of Mayfair's Lease

Application is attached to Plaintiff's Amended Complaint as Exhibit "E."

24.    Based upon information and belief, on or about March 6, 2001, Bank

Express secured Mayfair a lease agreement with QL Capital, Inc. by convincing QL

Capital to allow Mayfair to assume the lease agreement of the former owner of the Mayfair business.  This lease agreement assumption was secured by Bank Express from its principal place of business in King of Prussia, Pennsylvania.

25.    Based upon information and belief, on or about March 9, 2001, Mayfair entered a written agreement ("Mayfair Agreement") with Bank Express whereby Bank Express offered and Mayfair accepted, monthly electronic automated teller machine processing services from Bank Express for a period of five (5) years.

26.    Based upon information and belief, Mayfair's Agreement was signed by Mayfair's agent on or about March 9, 2001 and became effective when accepted and signed by me on or about March 9, 2001, in King of Prussia, Pennsylvania.  A copy of the Mayfair Agreement is attached to Plaintiff's Amended Complaint and marked as Exhibit "F."

27.    Based upon information and belief, between April 2001 and February 6, 2002, Mayfair received and cashed monthly surcharge checks mailed by Bank Express to Mayfair.  Bank Express mailed said checks to Mayfair either from its principal place of business in King of Prussia or its former principal place of business in Bala Cynwyd, Pennsylvania.

28.    Based upon information and belief, on or about February 6, 2002, Mayfair breached the Mayfair agreement by unilaterally terminating Bank Express' services before the expiration of the Mayfair Agreement's term and by refusing, despite demand, to return its ATM processing servicing to Bank Express.

29.     Based upon information and belief, Defendant, Jeoung Kim, is an individual trading as Salomi Video ("Salomi Video"), with a business address of 1038 E. El Camino Real, Sunnyvale, CA 94087.

30.     Based upon information and belief, on or about May 31, 2001, Salomi Video entered a written agreement ("Salomi Video Agreement") with Bank Express whereby Bank Express offered and Salomi Video accepted, monthly electronic automated teller machine processing services from Bank Express for a period of five (5) years.

31.     Based upon information and belief, Salomi Video's Agreement was signed by Salomi Video's agent on May 31, 2001 and became effective when accepted by me in King of Prussia, Pennsylvania.  A copy of the Salomi Video Agreement is attached to Plaintiff's Amended Complaint and marked as Exhibit "G."

32.     Based upon information and belief, between June 2001 and March 2002, Salomi Video received and cashed monthly surcharge checks mailed by Bank Express to Salomi Video.  Bank Express mailed said checks to Salomi Video from either its principal place of business in King of Prussia or its former principal place of business in Bala Cynwyd, Pennsylvania.

33.     Based upon information and belief, on or about March 2002, Salomi Video breached the Salomi Video Agreement by unilaterally terminating Bank Express' services before the expiration of the Salomi Video Agreement's term and by refusing, despite demand, to return its ATM processing services to Bank Express.

34.    Based upon information and belief, Defendant, Jung Soo Kim, is an individual trading as Danny's Market ("Danny's Market"), with a business address of 1570 Pomeroy Avenue, Santa Clara, CA 95051.

35.    Based upon information and belief, on or about October 16, 1999, Danny's Market submitted a Bank Express Lease Application, to Bank Express, whereby Danny's Market requested Bank Express to secure Danny's Market a lease agreement for an ATM with a third party leasing company.  Danny's Market's Lease Application clearly identifies the former principal place of business of Bank Express across its bottom as "8 Cynwyd Road, Suite 100, Bala Cywnyd, PA 19004."  A copy of Danny's Market's Lease Application is attached to Plaintiff's Amended Complaint and marked as Exhibit "H."

36.    Based upon information and belief, on or about October 18, 1999, Bank Express secured Danny's Market a lease agreement with ACH LEASING. This lease agreement was secured by Bank Express from its then principal place of business in Bala Cynwyd, Pennsylvania.

37.    Based upon information and belief, on or about October 18, 1999, Danny's Market entered a written agreement ("Danny's Market Agreement") with Bank Express whereby Bank Express offered and Danny's Market accepted, monthly electronic automated teller machine processing services from Bank Express for a period of five (5) years.  A copy of the Danny's Market Agreement is attached to Plaintiff's Amended Complaint and marked as Exhibit "I."

38.    Based upon information and belief, Danny's Market's Agreement identifies the address of Bank Express as "8 Cynwyd Road, Suite 100, Bala Cywnyd, PA

19004." Additionally, Danny's Market's Agreement specifically states that the contract was formed in Montgomery County, Pennsylvania.

39.    Based upon information and belief, between November 1999 and February 2002, Danny's Market received and cashed monthly surcharge checks mailed by Bank Express to Danny's Market. Bank Express mailed said checks to Danny's Market from either its principal place of business in King of Prussia or its former principal place of business in Bala Cynwyd, Pennsylvania.

40.    Based upon information and belief, on or about February 2002, Danny's Market breached the Danny's Market agreement by unilaterally terminating Bank Express' services before the expiration of the Danny's Market Agreement's term and by refusing, despite demand, to return its ATM processing services to Bank Express.

41.    Based upon information and belief, Defendant, Jeong Kim, is an individual trading as Club House Café & Lounge ("Club House"), with a business address of 1010 S. Wolfe Road, Sunnyvale, CA 94086.

42.    Based upon information and belief, on or about May 31, 2001, Club House entered a written agreement ("Club House Agreement") with Bank Express whereby Bank Express offered and Club House accepted, monthly electronic automated teller machine processing services from Bank Express for a period of five (5) years.

43.    Based upon information and belief, Club House's Agreement was signed by Club House's agent on May 31, 2001 and became effective when reviewed and accepted by me in King of Prussia, Pennsylvania. A copy of the Club House Agreement is attached to Plaintiff's Complaint and marked as Exhibit "J."

44.    Based upon information and belief, between June 2001 and March 5, 2002, Club House received and cashed monthly surcharge checks mailed by Bank Express to Club House.  Bank Express mailed said checks to Club House from either its principal place of business in King of Prussia, or its former principal place of business in Bala Cynwyd, Pennsylvania.

45.    Based upon information and belief, on or about March 5, 2002, Club House breached the Club House Agreement by unilaterally terminating Bank Express' services before the expiration of the Club House Agreement's term and by refusing, despite demand, to return its ATM processing services to Bank Express.

46.    Based upon information and belief, Defendant, Young Bin Yu, is an individual trading as West Side Liquor ("West Side"), with a business address of 1272 San Juan Road, Hollister, CA 95023.

47.    Based upon information and belief, on or about May 30, 2001, West Side submitted a Bank Express Lease Application, to Bank Express, whereby West Side requested Bank Express secure West Side a lease agreement for an ATM with a third party leasing company.  West Side's Lease Application clearly identifies the principal place of business of Bank Express across the bottom as "Bank Express International 489 Shoemaker Rd. Ste. 110, King of Prussia, PA 19406."  A copy of West Side's Application is attached to Plaintiff's Amended Complaint and marked as Exhibit "K."

48.    Based upon information and belief, on or about May 30, 2001, West Side entered a written agreement ("West Side Agreement") with Bank Express whereby Bank Express offered and West Side accepted, monthly electronic automated teller machine processing services from Bank Express for a period of five (5) years.

49.     Based upon information and belief, West Side's Agreement was signed by West Side's agent on May 30, 2001 and became effective when accepted and signed by me on or about May 30, 2001 in King of Prussia, Pennsylvania.  A copy of the West Side Agreement is attached to Plaintiff's Amended Complaint and marked as Exhibit "L."

50.     Based upon information and belief, between June 2001 and February 7, 2002, West Side received and cashed monthly surcharge checks mailed by Bank Express to West Side.  Bank Express mailed said checks to West Side from either its principal place of business in King of Prussia or its previous principal place of business in Bala Cynwyd, Pennsylvania.

51.     Based upon information and belief, on or about February 7, 2002, West Side breached the West Side Agreement by unilaterally terminating Bank Express' services before the expiration of the West Side Agreement's term and by refusing, despite demand, to return its ATM processing services to Bank Express.

52.     Based upon information and belief, Defendant, Karen Ha, is an individual trading as Elcamino Mongolian BBQ ("Elcamino"), with a business address of 3380 El Camino Real, Santa Clara, CA 95051.

53.     Based upon information and belief, on or about September 20, 1999, Elcamino completed a Bank Express ATM Order Form wherein Elcamino requested Bank Express order an ATM for Elcamino.  Said ATM Order Form clearly indicates the former business address for Bank Express in the upper left hand corner.  The document states "Bank Express of Philadelphia, 8 Cynwyd Road & Union Avenue, Bala Cynwyd, Pennsylvania 19004."  A copy of the ATM Order Form is attached to Plaintiff's Amended Complaint and marked as Exhibit "M."

54.     Based upon information and belief, on or about September 11, 1999, Elcamino submitted a Bank Express Lease Application, to Bank Express, whereby Elcamino requested Bank Express secure Elcamino a lease agreement for an ATM with a third party leasing company.  Elcamino's Lease Application clearly identifies the former principal place of business of Bank Express across the bottom as "8 Cynwyd Road, Suite 100, Bala Cynwyd, PA 19004"  A copy of Elcamino's Lease Application is attached to Plaintiff's Amended Complaint and marked as Exhibit "N."

55.     Based upon information and belief, on or about September 20, 1999, Bank Express secured a lease agreement for Elcamino with ACH LEASING.  This lease agreement was secured by Bank Express from its principal place of business in King of Prussia, Pennsylvania.

56.     Based upon information and belief, on or about September 20, 1999, Elcamino entered a written agreement ("Elcamino Agreement") with Bank Express whereby Bank Express offered and Elcamino accepted, monthly electronic automated teller machine processing services from Bank Express for a period of five (5) years.

57.     Based upon information and belief, Elcamino's Agreement was signed by Elcamino's agent on or about September 20, 1999 and became effective when accepted and signed by me on or about September 20, 1999 in King of Prussia, Pennsylvania.  A copy of the Elcamino Agreement is attached to Plaintiff's Amended Complaint and marked as Exhibit "O."

58.     Based upon information and belief, between October 1999 and February 2002, Elcamino received and cashed monthly surcharge checks mailed by Bank Express to Elcamino.  Bank Express mailed said checks to Elcamino from either its principal

place of business in King of Prussia or its former principal place of business in Bala Cynwyd,  Pennsylvania.

59.    Based upon information and belief, on or about February 2002, Elcamino breached the Elcamino Agreement by unilaterally terminating Bank Express' services before the expiration of the Elcamino Agreement's term and by refusing, despite demand, to return its ATM processing services to Bank Express.

60.    Based upon information and belief, Defendant, Ragvinder Sandhu, is an individual trading as Bonfare Market #24 ("Bonfare"), with a business address of 211 Port Chicago #4 West, Bay Point, CA 94565.

61.    Based upon information and belief, on or about May 24, 2000, Bonfare submitted a Bank Express Lease Application, to Bank Express, whereby Bonfare requested Bank Express secure Bonfare a lease agreement for an ATM with a third party leasing company.  Bonfare's Lease Application clearly identifies the principal place of business of Bank Express across the bottom as "8 Cynwyd Road, Suite 100, Bala Cynwyd, PA 19004." A copy of Bonfare's Lease Application is attached to Plaintiff's Amended Complaint and marked as Exhibit "P."

62.    Based upon information and belief, on or about April 17, 2000, Bank Express secured a lease agreement for Bonfare with ACH LEASING.  This lease agreement was secured by Bank Express from its principal place of business in King of Prussia, Pennsylvania.

63.    Based upon information and belief, on or about April 25, 2000, Bonfare entered a written agreement ("Bonfare Agreement") with Bank Express whereby Bank

Express offered and Bonfare accepted, monthly electronic automated teller machine processing services from Bank Express for a period of five (5) years.

64.    Based upon information and belief, Bonfare's Agreement identifies the address of Bank Express as "8 Cynwyd Road, Suite 1000, Bala Cynwyd, PA 19004."  A copy of the Bonfare Agreement is attached to Plaintiff's Amended Complaint and marked as Exhibit "Q."

65.    Based upon information and belief, between May 2000 and February 8, 2002, Bonfare received and cashed monthly surcharge checks mailed by Bank Express to Bonfare.  Bank Express mailed said checks to Bonfare from its principal place of business in King of Prussia or from its former principal place of business located in Bala Cynwyd, Pennsylvania.

66.    Based upon information and belief, on or about, February 8, 2002, Bonfare breached the Bonfare Agreement by unilaterally terminating Bank Express' services before the expiration of the Bonfare Agreement's term and by refusing, despite demand, to return its ATM processing services to Bank Express.

67.    Based upon information and belief, Defendant, Hamond Ku, is an individual trading as Bill of Fare ("Bill of Fare"), with a business address of 1005 Saratoga Avenue, San Jose, CA 95129.

68.    Based upon information and belief, on or about April 27, 2000, Bank Express secured a lease agreement for Bill of Fare with Smart Cash Leasing.  This lease agreement was secured by Bank Express from its principal place of business in King of Prussia, Pennsylvania.

69.     Based upon information and belief, on or about April 27, 2000, Bill of Fare entered a written agreement ("Bill of Fare Agreement") with Bank Express whereby Bank Express offered and Bill of Fare accepted, monthly electronic automated teller machine processing services from Bank Express for a period of five (5) years.  A copy of the Bill of Fare Agreement is attached to Plaintiff's Amended Complaint and marked as Exhibit "R."

70.     Based upon information and belief, Bill of Fare's Agreement identifies the address of Bank Express as "8 Cynwyd Road, Suite 1000, Bala Cynwyd, PA 19004."

71.     Based upon information and belief, between May 2000 and May 8, 2002, Bill of Fare received and cashed monthly surcharge checks mailed by Bank Express to Bill of Fare.  Bank Express mailed said checks to Bill of Fare from either its principal place of business in King of Prussia or its former principal place of business in Bala Cynwyd, Pennsylvania.

72.     Based upon information and belief, on or about May 8, 2002, Bill of Fare breached the Bill of Fare Agreement by unilaterally terminating Bank Express' services before the expiration of the Bill of Fare Agreement's term and by refusing, despite demand, to return its ATM processing services to Bank Express.

73.     Based upon information and belief, Defendant, Yeo Jung Lee and/or Secatide, Incorporated is an individual and/or is a corporation trading as Hiway Liquor ("Hiway"), with a business address of 1950 Fremont Blvd., Seaside, CA 93955.

74.     Based upon information and belief, on or about April 6, 2000, Hiway submitted a Bank Express Lease Application to Bank Express, whereby Hiway requested Bank Express secure Hiway a lease agreement for an ATM with a third party leasing

company.  Hiway's Lease Application clearly identifies the former principal place of business of Bank Express across the bottom as "8 Cynwyd Road, Suite 100, Bala Cynwyd, PA 19004."  A copy of Hiway's Lease Application is attached to Plaintiff's Amended Complaint and marked as Exhibit "S."

75.    Based upon information and belief, between May 2, 2000 and May 3, 2002, Bank Express attempted to secure Hiway a lease agreement with four (4) different leasing companies.  All attempts were rejected, as Hiway had derogatory credit, insufficient credit and/or minimal personal credit.  All attempts to secure Hiway a lease agreement were made by Bank Express from its principal place of business in King of Prussia, Pennsylvania.

76.    Based upon information and belief, on or about May 3, 2000, Bank Express leased an ATM from ACH LEASING LLC. and provided said machine to Hiway, at Hiway's location in California.  Bank Express entered this lease from its principal place of business in King of Prussia, Pennsylvania.  Bank Express leased the ATM in reliance upon a five (5) year ATM Site Location Agreement ("Location Agreement") between Bank Express and Hiway.  A copy of same is attached to Plaintiff's Amended Complaint and marked as Exhibit "T."

77.    Based upon information and belief, between June 2000 and February 2002, Hiway received and cashed monthly surcharge checks mailed by Bank Express to Hiway.  Bank Express mailed said checks to Hiway from either its principal place of business in King of Prussia or its former principal place of business in Bala Cynwyd, Pennsylvania.

78.     Based upon information and belief, on or about February 2002, Hiway breached the Hiway agreement by unilaterally terminating Bank Express' services before the expiration of the Hiway Agreement's term and by refusing, despite demand, to return its ATM processing services to Bank Express.

79.     Hereinafter, the above-identified Defendants will be collectively referred to as the "Business Owner Defendants."

80.     Based upon information and belief, in addition to the above-referenced actions, Bank Express mailed each Business Owner Defendant, during the pendency of the respective agreements, a monthly transaction summary.  All surcharge checks and transaction summaries were prepared, mailed and identified as originating from the then current principal place of business of Bank Express within the Commonwealth of Pennsylvania.

81.     Based upon information and belief, Bank Express has performed all of its obligations pursuant to the Agreements with the Business Owner Defendants in a complete, timely and satisfactory manner.

82.     Based upon information and belief, the Business Owner Defendants accepted the performance of Bank Express knowing Bank Express would expect payment for services rendered.

83.     Based upon information and belief, the Business Owner Defendants accepted the performance of Bank Express knowing Bank Express would expect the Business Owner Defendants to honor their respective Agreements for the length of the Agreements.

84.    Based upon information and belief, Defendant, Soo Y. Kang, d/b/a Bank Card Service, Incorporated and or d/b/a Bank Card Services ("BCS") is in the business of providing ATM services similar to those that Bank Express offers its clients, such as the Business Owner Defendants.

85.    Based upon information and belief, BCS hired, or formed a business relationship with, two former employees of Bank Express, namely an individual known as Joone Johe ("Johe") and an individual known as Bill Choy ("Choy").

86.    I believe, based on information provided to me by Bank Express Employees, various Business Owner Defendants, Johe, Choy, and Jay Suh ("Suh"), an employee of BCS, that at all times relevant hereto, Johe and/or Choy and/or Suh acted in their individual capacities and as officers, agents, authorized representatives, servants and/or employees of BCS.

87.    I believe, based on information provided to me by Bank Express Employees, various Business Owner Defendants, Johe, Choy and Suh, that at all times relevant hereto, BCS acted though its agents, authorized representatives, servants, employees and/or workmen, including, but not limited to Johe, Choy and/or Suh.

88.    Based upon information and belief, prior to being associated with BCS, Johe and Choy were employed by Bank Express as sales representatives for its ATM services.

89.    Based upon information and belief, pursuant to their employment with Bank Express, Johe and Choy were responsible for soliciting customers for Bank Express in the geographical areas wherein the Business Owner Defendants are located.

90.    Based upon information and belief, during the term of their employment with Bank Express, Johe and Choy had access to confidential information of Bank Express. Including but not limited to, customer lists, sources of supply, employees, personnel policies, sales and services merchandising, business plans, pricing/billing schedules, and copies of existing Agreements. Johe and Choy knew Bank Express was a Pennsylvania Corporation, headquartered in Pennsylvania and that the effect of their tortuous conduct would be felt directly in Pennsylvania. I believe Johe and Choy shared this information with BCS.

91.    Based upon information and belief, all of the confidential information and items set forth above were, and should have been known by Johe and Choy, and later BCS, to be competitively sensitive information which Bank Express treated, and Johe, Choy, and later BCS, knew or should have known were given to Johe and Choy while Johe and Choy were held by Bank Express in positions of confidence and trust. Johe, Choy and later BCS, knew, or should have known, that Johe and Choy were to treat, as confidential, proprietary information inasmuch as the disclosure of such information and items would operate to the detriment of Bank Express, and to the commercial advantage of the competitors of Bank Express, such as BCS.

92.    Based upon information and belief, during the term of Johe's and Choy's employment with Bank Express, Johe and Choy were the representatives of Bank Express in dealing with various Bank Express customers, including the Business Owner Defendants.

93.    I believe, based on information provided to me by Bank Express Employees, various Business Owner Defendants, Johe, Choy and Suh, that shortly after leaving the employ of Bank Express, Johe and Choy went to work with BCS.

94.    Based upon information and belief, on or around the time Johe and Choy left employ with Bank Express, Johe and Choy took for their future use and for the future use of BCS, without the express or implied consent or permission of Bank Express, various confidential information and other assets belonging to Bank Express, including but not limited to confidential information concerning the Business Owner Defendants. This information included but was not limited to files, existing Agreements, pricing information, literature and sales copies of orders directly connected to the Business Owner Defendants and that Johe and Choy provided and gave BCS such confidential information.  I am certain that Johe and Choy never returned such information to Bank Express and that they had access to such information before leaving Bank Express.

95.    I believe, based on information provided to me by Bank Express Employees, various Business Owner Defendants, Johe, Choy and Suh, that Johe, Choy and BCS have used, and will continue to use, the confidential information belonging to Bank Express to their commercial and competitive advantage and to the commercial and competitive detriment of Bank Express.

96.    Based upon information and belief, Johe, Choy and BCS have made disparaging and untrue comments about Bank Express to several of its customers, including the business Owner Defendants, for the sole purpose of causing harm to the business of Bank Express.  Such comments include telling various Business Owner Defendants (and other Business Owners that that did not convert to BCS) that Bank

Express was a "bad" company, that Bank Express was "out of business" and that, in the event of service trouble, Bank Express would be unable to service a malfunctioning machine. In fact, right when the BCS conversion effort began, I believe Johe, Choy and/or other representatives of BCS approached a Bank Express Customer named Tan Lu. Mr. Lu owns a chain or establishments known as T.K. Noodle ("T.K."). Bank Express services at least ten (10) of Mr. Lu's ATM machines. I believe Johe, Choy, Suh and BCS explicitly targeted T.K. due to the value of the account. Mr. Lu had actually signed a contract with BCS but canceled same when he learned the truth about the Johe, Choy and/or BCS misrepresentations.

97.    Based upon information and belief, following the T.K. conversion attempt, Johe, Choy and/or other BCS representatives, acting on their own and on behalf of BCS, approached many Bank Express customers, in particular the Business Owner Defendants, for the purpose of inducing the customers of Bank Express to cancel and breach their contracts with Bank Express. In fact, since the Original Complaint was filed I believe BCS, Johe, Choy and Suh have succeeded in converting three (3) additional accounts and have no intention of stopping. Additionally, in a dinner meeting with Suh that occurred on or about April 12, 2002, Suh explicitly told me he would not return the converted accounts, that a significant amount of money had been set aside for legal fees to litigate against a Bank Express Complaint and that BCS had, in fact, formed a business relationship with Johe and Choy.

98.    Based on this information, and confirmation obtained by myself and other current and past employee's of Bank Express from many of the Business Owner

Defendants, I believe the Business Owner Defendants left ATM servicing with Bank Express and went to servicing with BCS.

99.    Based upon information and belief, Bank Express has and will continue to suffer irreparable harm if the actions of Johe, Choy, Suh and BCS are not enjoined, including but not limited to the loss of customers, profits, business reputation and market share, and the loss of confidential business information.

100.    Based upon information and belief, BCS, through its agents, authorized representatives, servants and/or employees has willfully, repeatedly and without justification made untrue comments to the clients and perspective clients of Bank Express for the sole purpose of causing injury to the business reputation and good will of Bank Express.

101.    Based upon information and belief, the direct and proximate result of the aforesaid actions of BCS, is that Bank Express has suffered and will continue to suffer direct, irreparable injury and harm in Pennsylvania that is likely to continue unless enjoined.

102.    Based upon information and belief, BCS on its own behalf has induced certain of the customers of Bank Express to breach their contracts with Bank Express and switch their ATM servicing from Bank Express to BCS.  BCS directed this conduct at Bank Express knowing Bank Express is a Pennsylvania Corporation with its headquarters in Pennsylvania.  I believe that BCS banked on geographic distance to protect it from the consequences of its tortuous conduct.

103.    Based upon information and belief, said acts of BCS were and continue to be without privilege, are otherwise wrongful and tortuous, are in complete disregard of the rights of Bank Express and are intended only to benefit BCS, to the complete detriment of Bank Express.


BY:_____
          Taek Im Kim,
          Chief Executive Officer
          Bank Express International, Inc.


Sworn to and subscribed
Before me this          day
of               , 2002.


NOTARY PUBLIC