IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

BANK EXPRESS INTERNATIONAL      :        CIVIL ACTION
                                :
        v.                      :
                                :
SOO Y. KANG d/b/a BANKCARD      :
SERVICE, INC. et al.            :        NO. 02-4076

MEMORANDUM

Dalzell, J.                                    January 15, 2003


_____Since defendants in this diversity case have questioned personal jurisdiction and venue over them, we begin with a canvass of pertinent contacts.

Plaintiff Bank Express International ("BEI") is a Pennsylvania corporation in the business of servicing automated teller machines ("ATM's"). BEI's clients enter into long-term service agreements under which BEI monitors the electronic processing of ATM transactions, accepts telephone calls concerning technical difficulties, and arranges for the repair of malfunctioning machines. BEI provides all of these services from its principal place of business in Pennsylvania.[1]

Every month, BEI sends each client a summary of ATM transactions and a check for the merchant's share of the surcharges levied on ATM users, and both the check and summary bear BEI's Pennsylvania address. Because many prospective clients do not already have an ATM, BEI assists them in leasing

_____

[1] At the beginning of its relationship with some of the defendants in this case, BEI's principal place of business was in Bala Cynwyd, Pennsylvania. BEI subsequently moved to King of Prussia, Pennsylvania.

machines from third parties.  When BEI renders this service, the prospective client provides trade references and credit information on an application bearing BEI's Pennsylvania address. These clients generally sign the service agreement with BEI after BEI arranges the lease of an ATM.

Between 1999 and 2001, BEI agents in California solicited the business of the eleven merchants named as defendants in this case (the "Merchant Defendants"), each of whom entered into a five-year service agreement with BEI.  Nine of the Merchant Defendants also filled in lease applications.

Summarized here are the details of each Merchant Defendant's relationship with BEI, which we derive from the amended complaint, the exhibits thereto, and the affidavit of BEI's chief executive officer, Taek Im Kim:

| Defendant | Date of Lease Application | Date Deft. Signed Service Agreement | Type of Service Agreement |
|---|---|---|---|
| Soo Y. Yang, t/a Rancho Market | 11/11/99 | 11/19/99 | Long |
| Doo Young Lee, t/a Felton Fair Liquors | 1/22/01 | 2/1/01 | Long |
| Jenny Yu, t/a Mayfair Market | 3/3/01 | 3/9/01 | Long |
| Jeoung Kim, t/a Salomi Video | Not applicable | 5/31/01 | Long |
| Jung Soo Kim, t/a Danny's Market | 10/16/99 | 10/18/99 | Short |
| Jeong Kim, t/a Club House Café & Lounge | Not applicable | 5/31/01 | Long |
| Young Bin Yu, t/a West Side Liquor | 5/30/01 | 5/30/01 | Long |

| Karen Ha, t/a Elcamino Mongolian BBQ | 9/11/99[2] | 9/20/99 | Long |
|---|---|---|---|
| Ragvinder Sandhu, t/a Bonfare Market #24 | 5/24/00 | 4/25/00 | Short |
| Hamond Ku, t/a Bill of Fare | Not in record[3] | 4/27/00 | Short |
| Yeo Jung Lee, and/or Secatide, Inc., t/a Hiway Liquor | 4/6/00 | 5/3/00 | Other |

According to the amended complaint, BEI performed under these contracts until 2002, when agents of defendant Soo Y. Kang, doing business as Bankcard Service, Inc. ("BCS"), who is apparently a resident of California, induced the Merchant Defendants to breach their contracts with BEI and receive ATM services from BCS. BEI alleges that BCS was able to target its clients so effectively because it either hired or entered into a business relationship with two former BEI employees, Joone Johe and Bill Choy, who supplied BCS with BEI customer lists, business plans, pricing and billing schedules, copies of service agreements, and other confidential information.

BEI filed suit against BCS and the Merchant Defendants in the Court of Common Pleas of Montgomery County, Pennsylvania, on May 23, 2002. The defendants removed the case to federal

---

[2] Ha also completed an "ATM Order Form" bearing BEI's Bala Cynwyd address on September 20, 1999. Am. Compl. Ex. M.

[3] The amended complaint states that BEI procured an ATM lease for Bill of Fare but does not indicate whether Bill of Fare completed a lease application. Am. Compl. ¶ 69.

court on June 27, 2002.  On August 26, 2002, BEI filed an amended complaint asserting contract claims against the Merchant Defendants and a variety of tort claims against BCS.  Before us is the defendants' motion to dismiss the amended complaint for lack of personal jurisdiction and venue and to strike the amended complaint under Fed. R. Civ. P. 12(f).  In the alternative, the defendants seek transfer of this case to the Northern District of California.

Discussion

A.  Personal Jurisdiction

None of the defendants is a resident of Pennsylvania. Fed. R. Civ. P. 4(e) therefore authorizes personal jurisdiction over them only to the extent permissible under the law of the Commonwealth.  Pennsylvania's "long-arm" statute, in turn, provides in relevant part that personal jurisdiction extends "to the fullest extent allowed under the Constitution of the United States and may be based on the most minimum contact with this Commonwealth allowed under the Constitution of the United States."  42 Pa. Cons. Stat. Ann. § 5322(b) (West 2002).  Because the parties agree that no defendant is subject to general personal jurisdiction in Pennsylvania, we limit our inquiry to whether the defendants are subject to specific personal jurisdiction.[4]

---

[4]    We resolve the defendants' specific personal jurisdiction challenge by engaging in a tripartite inquiry that the Supreme Court's landmark decisions mandate in this area.

Specific jurisdiction analysis turns on the nature of the claim asserted against the defendant, <u>Gen. Elec. Co. v. Deutz AG</u>, 270 F.3d 144, 150 (3d Cir. 2001), and we therefore examine the breach of contract claims against the Merchant Defendants separately from the tort claims against BCS.

### 1.    The Merchant Defendants

In contract cases, specific jurisdiction exists if "the defendant's contacts with the forum were instrumental in either the formation of the contract or its breach." <u>Id.</u>, <u>quoting</u>

---

First, we ask whether the defendants have "purposefully established minimum contacts within the forum State," <u>Burger King Corp. v. Rudzewicz</u>, 471 U.S. 462, 476 (1985), such that they may "reasonably anticipate being haled into court there." <u>World-Wide Volkswagen Corp. v. Woodson</u>, 444 U.S. 286, 297 (1980). Second, we determine whether the cause of action arises from or is related to those forum-based contacts. <u>Burger King</u>, 471 U.S. at 472. Finally, we ask whether the assertion of personal jurisdiction "comport[s] with 'fair play and substantial justice.'" <u>Id.</u> at 476, <u>quoting</u> <u>Int'l Shoe Co. v. Washington</u>, 326 U.S. 310, 320 (1945).

When the defendant challenges the existence of personal jurisdiction, the plaintiff bears the burden of producing sufficient facts to establish that jurisdiction is proper, and it "must sustain its burden of proof in establishing jurisdictional facts through sworn affidavits or other competent evidence." <u>Time Share Vacation Club v. Atlantic Resorts, Ltd.</u>, 735 F.2d 61, 66-67 n.9 (3d Cir. 1984). The plaintiff may present a prima facie case for the exercise of personal jurisdiction, and thereby defeat a Rule 12 motion, by "establishing with reasonable particularity sufficient contacts between the defendant and the forum state." <u>Zubyk v. LPBOC Hotel Ltd. Partnership</u>, No. 00-971, 2000 WL 963168, at * 1 (E.D. Pa. June 27, 2000) (Padova, J.). For the purpose of resolving the motion, we accept the plaintiff's allegations as true and construe disputed facts in the plaintiff's favor. <u>Carteret Savings Bank, F.A. v. Shushan</u>, 954 F.2d 141, 142 n.1 (3d Cir. 1992). Here, BEI relies on the affidavit of its chief executive officer, Taek Im Kim, as well as the Merchant Defendants' lease applications and service agreements.

Phillips Exeter Acad. v. Howard Phillips Fund, 196 F.3d 284, 289
(1st Cir. 1999); see also Burger King, 471 U.S. at 473 (parties
who "reach out beyond [their] state and create continuing
relationships and obligations with citizens of another state" are
subject to that state's regulation and sanctions).

### (a)    Minimum contacts

        In determining whether the party to a contract has
purposefully established minimum contacts within the other
party's home forum, the Supreme Court has directed us to examine
"prior negotiations and contemplated future consequences, along
with the terms of the contract and the parties' actual course of
dealing." Id. at 479.

        Each Merchant Defendant signed a standard-form contract
with BEI, but the terms of those contracts varied in a manner
that affects our minimum contacts analysis.  We therefore cluster
the defendants by the type of contract they signed and examine
each group of defendants separately.

### (1)    "Long" Contract Signatories

        Seven defendants signed what we term, for want of a
more elegant phrase, the "long" contract.  This detailed contract
states that BEI is a Pennsylvania corporation located in King of
Prussia and provides that the contract shall be governed,
constructed, and enforced in accordance with the laws of the
Commonwealth.  See, e.g., Am. Compl. Ex. B ¶ 12 (Service
Agreement of defendant Soo Y. Kang).

-6-

We do not hesitate to conclude that each of these seven
defendants purposefully directed business activity toward
Pennsylvania by entering into a long-term contractual
relationship with BEI.  Five of them initiated the relationship
by completing a lease application bearing BEI's Pennsylvania
address.  All of them signed a contract providing them with ample
notice that BEI's principal place of business is in Pennsylvania.
And their subsequent course of dealing with BEI consisted of an
ongoing flow of electronic data to Pennsylvania and the monthly
receipt of checks and activity reports sent from Pennsylvania and
bearing BEI's Pennsylvania address.  These contacts extend well
beyond mere "informational communications" and are a sufficient
basis for personal jurisdiction.  See Vetrotex Certainteed Corp.
v. Consol. Fiber Glass Prods. Co., 75 F.3d 147, 152 (3d Cir.
1996).

(2)  "Short" Contract Signatories

Three defendants signed a less detailed, one-page
contract that neither identifies BEI as a Pennsylvania
corporation nor contains a Pennsylvania choice-of-law provision.
We nevertheless conclude that these defendants also purposefully
established minimum contacts with Pennsylvania such that they may
reasonably anticipate being haled into court here.

The "short" contract prominently displays BEI's
Pennsylvania address at the bottom of the first page, thereby
putting these defendants on notice that they were embarking on a
long-term contractual relationship with a firm whose place of

business is in Pennsylvania.  Like the Merchant Defendants who signed "long contracts," these defendants engaged in extensive contacts with BEI in Pennsylvania after executing their service agreements.  See Mesalic v. Fiberfloat Corp., 897 F.2d 696, 700 (3d Cir. 1990) (post-sale contacts, coupled with notice that plaintiff was a New Jersey resident, constituted sufficient minimum contacts to establish personal jurisdiction).  We additionally note that two of the three completed lease applications provided the signatories with even earlier notice of BEI's Pennsylvania ties before those defendants executed service agreements.

For all of these reasons, we conclude that the "short" contract signatories purposefully directed business activity toward Pennsylvania.

### (3)    Defendant Yeo Jung Lee

Defendant Yeo Jung Lee[5] signed a form contract unlike the others.  Lee's contract does not bear BEI's address, does not mention that BEI is a Pennsylvania corporation, contains a fill-in-the-blank choice-of-law provision that was never completed, and designates the Superior Court of Cuyahoga County, Ohio, as the venue for any dispute relating to the lessor's right to access or remove the machine.  Am. Compl. Ex. T ¶¶ 6, 22.

---

[5] The amended complaint states that "Yeo Jung Lee and/or Secatide, Incorporated is an individual and/or is a corporation trading as Hiway Liquor," Am. Compl. ¶ 74.  For the sake of brevity, we refer to this defendant simply as "Lee."

Despite these contractual lacunae and the eyebrow-raising venue provision, we find that defendant Lee is also subject to specific personal jurisdiction in Pennsylvania.

Like the other Merchant Defendants, Lee received notice of BEI's ties to Pennsylvania when he filled in a lease application bearing BEI's former address in Bala Cynwyd, Pennsylvania.  After signing the service agreement a few weeks later, he engaged in what the Supreme Court has termed contacts that "create a 'substantial connection' with the forum state," Mesalic, 897 F.2d at 701, quoting Burger King, 471 U.S. at 475-76, by authorizing the transmittal of electronic data from his ATM to BEI's Pennsylvania offices and then receiving checks and monthly activity reports from BEI.

### (b)  Relatedness

In addition to determining whether the Merchant Defendants established minimum contacts with Pennsylvania, we must examine whether BEI's cause of action arises from or is related to those contacts.  Under the terms of the service agreements, the Merchant Defendants directed a flow of ATM data to BEI in Pennsylvania.  The breach occurred when they ended those transmittals of information and redirected them to BCS.

We therefore conclude that the Merchant Defendants' breaches of contract were wholly intertwined with their Pennsylvania contacts.

### (c)  "Fair play and substantial justice"

-9-

Finally, we examine whether the assertion of specific personal jurisdiction over the Merchant Defendants comports with "fair play and substantial justice." Burger King, 471 U.S. at 476, quoting Int'l Shoe, 326 U.S. at 320. Defendants who have purposefully directed their activities at forum residents "must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." Id. at 477. The Merchant Defendants have declined to challenge personal jurisdiction on this ground. We therefore conclude that this Court can assert specific personal jurisdiction over the Merchant Defendants.

2.    BCS

The amended complaint asserts claims against BCS for disparagement, misuse of confidential information, and interference with contract. Am. Compl. ¶¶ 92-120. Because these causes of action are intentional torts, the three-part test that our Court of Appeals articulated in Imo Industries, Inc. v. Kiekert AG, 155 F.3d 254 (3d Cir. 1998), governs our minimum contacts inquiry. Under the Imo test, the plaintiff can establish the defendant's minimum contacts with the forum by showing that:

(1)    The defendant committed an intentional tort;

(2)    The plaintiff felt the brunt of the harm in the forum such that the forum can be said to be the focal point of the harm suffered by the plaintiff as a result of that tort;

(3)    The defendant expressly aimed his tortious conduct

-10-

        at the forum such that the forum can be said to be the
        focal point of the tortious activity.

Id. at 265-66.

        We begin with the most difficult question: Whether Kang
expressly aimed his tortious conduct at Pennsylvania within the
meaning of Imo Industries.  We resolve it by examining each tort
claim separately.

                    (a)   Interference with Contract

        The amended complaint alleges that Kang's firm, BCS,
induced customers to cancel their contracts with BEI and
authorize BCS to provide ATM monitoring services.  Kim's
affidavit substantiates this claim with specific examples of
customers who defected from BEI to BCS.  See Kim's Aff. ¶¶ 97-98.
The affidavit also states that Joone Johe and Bill Choy, the
former BEI employees who either worked for or formed a business
relationship with BCS, knew that BEI would directly feel the
effect of BCS's tortious conduct in Pennsylvania and shared this
knowledge with BCS.  Id. at 20.

        In Remick v. Manfredy, 238 F.3d 248, 260 (3d Cir.
2001), our Court of Appeals held that residents of Indiana and
Illinois were subject to personal jurisdiction in Pennsylvania
for tortiously interfering with a contract under which the
plaintiff had rendered most of his services from offices in
Philadelphia.  Because BEI has averred that it performed all of
its services for clients from its Pennsylvania offices, we
similarly conclude that BCS's alleged interference with contracts

                              -11-

was "expressly aimed" at Pennsylvania.[6]

Kang is therefore subject to specific personal jurisdiction in Pennsylvania on this claim.[7]

(b)  <u>Misuse of Confidential Information</u>

BEI claims, and Kim has averred, that Johe and Choy appropriated confidential information, including information directly concerning the Merchant Defendants, during their employment with BEI and are now using it to BCS's commercial advantage and to BEI's commercial detriment.  Am. Compl. ¶ 113; Kim's Aff. ¶ 94-95.  However, Kim has not averred that BCS's aim in misusing the confidential information is to injure BEI; instead, we surmise from the affidavit that BCS is misusing the information to further a profit-seeking stratagem in California that only collaterally harms BEI in Pennsylvania.  <u>See</u>, <u>e.g.</u>, Kim's Aff. ¶ 96 (averring that BCS has targeted a BEI customer, T.K. Noodle, "due to the value of the account").  <u>Accord</u> <u>Remick</u>, 238 F.3d at 259 (harm resulting from misappropriation of plaintiff's image by posting photograph on website caused "incidental" harm in Pennsylvania but was not expressly aimed there).

_____

[6] Based on this averment, we also conclude that BEI has satisfied the second prong of the <u>Imo Industries</u> test.

[7] We can find no reason why the assertion of specific personal jurisdiction as to this claim would violate principles of fair play and substantial justice, nor has BCS objected to personal jurisdiction on this ground.

While BEI has satisfactorily established for the purposes of this motion that BCS knows BEI is bearing the brunt of this harm in Pennsylvania, our Court of Appeals has expressly held that such knowledge is not a sufficient basis for specific personal jurisdiction. <u>Imo Industries</u>, 155 F.3d at 265. We therefore conclude that BEI has failed to sustain its burden of showing that BCS's alleged misuse of confidential information is "'intentionally targeted at and focused on'" Pennsylvania. <u>Id.</u>, <u>quoting</u> <u>ESAB Group, Inc. v. Centricut</u>, 126 F.3d 617, 625 (4th Cir. 1997).

(c)  <u>Disparagement</u>

Finally, BEI claims in Count IV of the amended complaint that BCS "has willfully, repeatedly and without justification made untrue comments to the clients and perspective [<u>sic</u>] clients of Bank Express for the sole purpose of causing injury to the business reputation and good will of Bank Express." It seeks legal and equitable relief from BCS for "disparaging the reputation and goodwill of Bank Express." Am. Compl. ¶¶ 111-112. More specifically, Kim has averred that BCS agents have told BEI clients that it is a "bad" company, that it is out of business, and that it is unable to service malfunctioning ATM's. Kim's Aff. ¶ 96.

At the threshold, we note that it is not immediately apparent what theory of liability BEI invokes in Count IV. Pennsylvania law recognizes the tort of "commercial

disparagement," sometimes called "slander of title," which imposes liability for the publication of a false disparaging statement concerning the business of another where, <u>inter</u> <u>alia</u>, the publisher either intends the publication to cause pecuniary loss or reasonably should recognize that publication will result in pecuniary loss.  <u>Pro Golf Mfg. v. Tribune Review Newspaper</u>, 809 A.2d 243, 246 (Pa. 2002).  Commercial disparagement differs from slander and libel in that the former protects economic interests and property against pecuniary loss while the latter protect against damage to reputation.  <u>Id.</u> at 246-47 (acknowledging this distinction but concluding that the statute of limitations for libel and slander nevertheless applies to claims for commercial disparagement).

We need not decide whether BEI has brought a claim for commercial disparagement resulting in harm to its reputation and goodwill or a claim for garden-variety slander[8] because, in either case, BEI has not satisfied the stringent third prong of the <u>Imo Industries</u> test.

A defendant expressly aims a defamatory statement at a particular state if he has in some fashion "entered" the state, for example by broadcasting or distributing the statement there. <u>Imo Industries</u>, 155 F.3d at 265, <u>quoting Indianapolis Colts, Inc.</u> <u>v. Metropolitan Baltimore Football Club</u>, 34 F.3d 410, 412 (7th Cir. 1994).  If the statement circulates nationally, the

---

[8] The disparaging statements were apparently verbal.  Kim's Aff. ¶ 100.

defendant can be said to have expressly aimed the statement at a particular state where there is a unique relationship between the state and the plaintiff's industry or business.  See id. at 264 & n.7, comparing Cybersell, Inc. v. Cybersell, Inc., 130 F.3d 414 (9th Cir. 1997) with Panavision Int'l, L.P. v. Toeppen, 141 F.3d 1316 (9th Cir. 1999); Remick, 238 F.3d at 259 (noting that plaintiff has "not asserted that Pennsylvania has a unique relationship with the boxing industry," as distinguished from the longstanding, special relationship between California and the film industry that figured in Calder v. Jones, 465 U.S. 783 (1984)).

Here, BEI has not asserted that there is a unique relationship between the ATM servicing industry and Pennsylvania, nor does it claim that BCS's agents have ever made disparaging remarks about BEI in Pennsylvania or published those comments here.  To the contrary, Mr. Kim's affidavit leaves us with the strong impression that BCS's agents have made all of the disparaging comments in California to potential California clients.

We therefore conclude that, whether BEI means to state a claim for commercial disparagement or slander, it has not shown that BCS expressly aimed the alleged harm to its reputation and goodwill  at Pennsylvania.

3.    <u>BEI's Request for Limited Discovery</u>

We have found that this Court can assert specific personal jurisdiction over the Merchant Defendants on all claims and over BCS for the interference with contract claim.  However, BEI has not presented a prima facie case for specific jurisdiction over BCS on the misuse of confidential information and disparagement claims because it has failed to satisfy the third prong of the <u>Imo Industries</u> test.

BEI argues that, if we find that the facts are not yet sufficiently developed to sustain personal jurisdiction over BCS, it is entitled to a period of limited discovery on jurisdictional issues.  Limited discovery is available on jurisdictional issues under the appropriate circumstances.  In <u>Renner v. Lanard Toys Ltd.</u>, 33 F.3d 277, 283 (3d Cir. 1994), our Court of Appeals confirmed that a district court should authorize limited discovery on jurisdictional issues to resolve ambiguities in the record.  However, BEI's position in this case differs materially from that of the plaintiffs in <u>Renner</u>, who had virtually no opportunity to develop the factual basis for jurisdiction.[9]  In this case, by contrast, the defendants filed their motion almost four months ago, and we both authorized BEI to satisfy its burden on the jurisdictional issue by submitting affidavits and granted additional time to prepare them.  <u>See</u> Order of Dec. 6, 2002.

---

[9] In <u>Renner</u>, the defendant moved for dismissal a scant three days after the case had been removed, and the plaintiffs had less than a month to respond.  Moreover, the district court dismissed the case several days later.  <u>Renner</u>, 33 F.3d at 283.

-16-

Given the fact that we have given BEI ample opportunity to present a prima facie case, we do not find that additional discovery is warranted.

B.  Venue and Transfer

The defendants also assert that venue is not proper in the Eastern District of Pennsylvania under 28 U.S.C. § 1391. However, § 1391 does not apply to this case because it was removed from state court.  Polizzi v. Cowles Magazines, Inc., 345 U.S. 663, 665 (1953).  Instead, the removal statute, 28 U.S.C. § 1441, provides the basis for venue in this district as to all claims.  See Gallant v. Trustees of Columbia University in the City of New York, 111 F.Supp.2d 638, 645 (E.D. Pa. 2000). Nevertheless, because we have found that BCS is not subject to personal jurisdiction on the disparagement and misuse of confidential information claims, we must decide what is the fairest and most efficient disposition of this case in its entirety.

The defendants seek transfer of venue under 28 U.S.C. § 1631.  We begin by examining whether the claims against BCS are transferable under § 1631.[10]  Our Court of Appeals has suggested in dictum that, when personal jurisdiction is lacking, a court

_____

[10] Section 1631 permits transfer of less than all of the claims comprising the action.  See Miller v. United States, 753 F.2d 270, 275-76 (3d Cir. 1985) (allowing transfer of part of an appeal to the Federal Circuit); see also United States v. County of Cook, Illinois, 170 F.3d 1084, 1087-89 (Fed. Cir. 1999) (examining this question in depth and concluding that transfer of less than all claims is proper under § 1631).

may transfer an action under 28 U.S.C. § 1631.[11]  <u>Renner</u>, 33 F.3d
at 284; <u>see also</u> <u>Gallant</u>, 111 F.Supp.2d at 647.  Rather than
dismiss the disparagement and misuse of confidential information
claims, we conclude that it is in the interest of justice to
transfer these claims to the Northern District of California,
where BCS is subject to personal jurisdiction and where venue is
unquestionably proper.

We further conclude that transfer of all other claims
to that district is proper under 28 U.S.C. § 1404(a).[12]  The
Northern District of California is without question more
convenient for the defendants.[13]  Transfer is even more clearly

---

[11]  Section 1631 provides in relevant part:

Whenever a civil action is filed in a [federal] court .
. . and that court finds that there is a want of
jurisdiction, the court shall, if it is in the interest
of justice, transfer such action . . . to any other
such court in which the action . . . could have been
brought at the time it was filed or noticed . . . .

[12]  Although no party has requested it, we may transfer venue
under § 1404(a) <u>sua</u> <u>sponte</u>.  <u>See</u>, <u>e.g.</u>, <u>Chukwu v. Air France</u>, 218
F.Supp. 2d 979, 990 (N.D. Ill. 2002).  Courts often give parties
an opportunity to brief the transfer issue before entry of the
transfer order.  <u>See</u> <u>Library Publications v. Heartland Samplers</u>,
825 F.Supp. 701, 705 n.3 (E.D. Pa. 1993); <u>Starnes v. McGuire</u>, 512
F.2d 918, 934 (D.C. Cir. 1974).  We decline to provide the
parties with this opportunity given the strong weight we accord
to avoiding the waste of judicial resources that would inevitably
result from the bifurcation of claims in this case.

[13]  While the plaintiff's choice of venue is usually entitled
to deference, it has minimal significance when the events at
issue occurred elsewhere.  <u>Lindley v. Caterpillar, Inc.</u>, 93
F.Supp.2d 615, 617 (E.D. Pa. 2000).  As we have noted above,
virtually all of the actual conduct in this case giving rise to
these claims (as opposed to the defendants' "contacts" with
Pennsylvania) took place in California.

in the interest of justice, as Justice Black remarked over forty
years ago:

> To permit a situation in which two cases involving
> precisely the same issues are simultaneously pending in
> different District Courts leads to the wastefulness of
> time, energy and money that § 1404(a) was designed to
> prevent.

Continental Grain Co. v. The FBL-585, 364 U.S. 19, 26 (1960).

This case is a textbook illustration of the concerns
that prompted Justice Black's comments.  Bifurcation of the
claims will result in the litigation of essentially the same
facts in two district courts.  Transfer under § 1404(a) is
therefore warranted despite any inconvenience BEI may suffer.

C.  Motion for a More Definite Statement

The defendants assert that BEI's amended complaint is
so vague and ambiguous that it should be stricken under Fed. R.
Civ. P. 12(f), and they argue in the alternative that we should
order BEI to file another complaint pursuant to Fed. R. Civ. P.
12(e).  Because this case will be transferred to the Northern
District of California, it is more appropriate for that court to
address the merits of this motion.  We therefore deny it without
prejudice to its reassertion after transfer.

Conclusion

For the foregoing reasons, we conclude that this Court
can assert specific personal jurisdiction over the Merchant
Defendants and that venue lies in this district on the claims
against them.  Although this Court can assert specific

-19-

jurisdiction over BCS as to the tortious interference with contract claim, there is no jurisdiction here as to the disparagement and misuse of confidential information claims.

Venue in this district is proper as to the breach of contract claims against the Merchant Defendants but not as to the disparagement and misuse of confidential information claims against BCS.  We transfer the latter claims to the Northern District of California pursuant to 28 U.S.C. § 1631, and we conclude that a transfer of all other claims to that district is appropriate under 28 U.S.C. § 1404(a).  Finally, we deny without prejudice the defendants' motion for a more definite statement.